Conger *v*. Ring.

---

CONGER *vs.* RING, executor, &c.

The rule that a trustee, or person standing in a situation of trust and confidence, shall not purchase or deal with the subject of the trust, for his own benefit, is absolute and universal, and subject to no qualifications or exceptions.

Where an executor, with power to sell under the will, or whose duty it is to exert that power with the aid of a surrogate's order, upon becoming aware of the insufficiency of the personal assets, purchases the trust property, at a sale under a mortgage or other incumbrance, for less than its value, he must take it for the benefit of those for whom he is bound to act; provided they assert their rights within a reasonable time.

And where the personal estate of the testator is insufficient to pay his debts, and there is no other real estate, the mortgaged premises thus purchased by the executor will, upon the application of creditors of the testator, be *resold.*

The sole purpose of directions in a decree for the sale of mortgaged premises, authorizing any party to the suit to become a purchaser, is to avoid the effect of a supposed technical rule that a party to a suit can not become a purchaser under the decree, without special leave; not to authorize him to purchase and hold contrary to equity.

THIS was an appeal by the plaintiff from a judgment entered at a special term, by a justice of this court, upon a special verdict. The action was brought against the defendant, as executor of Tobias Stoutenburgh, to recover the amount of a promissory note made by the testator, for $275,61, payable to one Schultz, or bearer, and of which the plaintiff had become the owner. The

Conger *v.* Ring.

complaint alledged that the testator died in 1846, leaving some personal estate, and 186 acres of land in Clinton, Dutchess county, of the value of at least $4000, but mortgaged to one John Drury for about $850; that the defendant's testator made his will in March, 1845, appointing his wife and the defendant executors; that the widow renounced, and letters testamentary were granted to the defendant; that the testator left six children, one of whom was the wife of the defendant; that the will directed the real and personal estate to be sold within one year after the testator's decease, but if the wife survived then within one year after her death, and directed as to the distribution of the proceeds of the sale; that the real and personal estate greatly exceeded the debts; that the defendant fraudulently procured the Drury mortgage to be assigned to A. Wager, his attorney, who immediately foreclosed it in chancery; that at the sale under the decree of foreclosure the defendant was the only bidder, and became the purchaser, for $1100, and received a deed from the master; that the parties in interest believed he purchased in his representative capacity, he creating that belief by saying, prior to the sale, that he would see the property brought its fair value; that after the sale Schultz insisted on the payment of his debt, remarking on the gross discrepancy between the price and the value, and saying that he would give $4000 for the farm; that the defendant, in reply, told Schultz the sum bid was of no consequence as, had he bid the full value the surplus would have lain idle, and he promised to pay the note; that Schultz relied on such promise, until after a final accounting by the defendant, before the surrogate, and the surrogate's decree thereon, made in May, 1848, when the defendant refused to pay him any more than $46,50, his dividend under the decree, which Schultz refused to accept; that the estate was more than sufficient to pay the debts, if properly applied. The plaintiff insisted that the defendant should be regarded as a trustee; that his promise to pay Schultz was valid, and an acknowledgment that the defendant bought as trustee; and the complaint demanded judgment for the amount of the note with interest, or that the real estate, or so much as should be necessary,

might be sold, under the direction of the court, to pay the plaintiff's demand and the costs.

The defendant, by his answer, insisted that he was no longer executor; that on the 29th of May, 1848, he was discharged from all further liability as executor, by the surrogate, on a final accounting before him; that Schultz was cited to appear before the surrogate. The answer also alledged that the real estate was not worth over $2500; that the will was so defective as to render it incapable of being executed; that the debts exceeded the sum of $1744, and the personal estate was worth about $400. The defendant denied all fraud or bad faith, in the execution of his trusts; and alledged that a short time after the decease of the testator he ascertained that the personal estate was insufficient to pay the debts, and that it would be necessary to sell the real estate, but found that the will was so defective that a perfect title could not be given to the purchaser under it, (the widow of the testator being still living,) and that in consequence it would not sell to advantage. He denied connivance with Wager to purchase the Drury mortgage, but admitted talking to him on the subject; he also denied that Wager was his attorney previous to the accounting; and alledged that the widow and heirs assented to the foreclosure; that the decree authorized the parties to purchase; that the defendant had not assets to pay the mortgage; that he purchased on his own account; he denied the offer by Schultz to give $4000 for the farm, or any promise by him, the defendant, to pay the note. He insisted that there was not sufficient real and personal estate to pay the debts of the testator; that the note was transferred to make Schultz a witness; that the defendant had improved the premises, and laid out $1500 thereon; that the decree of the court of chancery was final, and could not be questioned here; that the decree of the surrogate was binding upon Schultz, and the plaintiff; that if any promise was made to Schultz, by the defendant, to pay the note, it was void, for not being in writing; that the estate was now indebted to the defendant in the sum of $1195,70, after deducting his dividend, &c.

Conger *v.* Ring.

The plaintiff put in a replication denying all the material allegations in the answer.

The cause was tried at the circuit in Dutchess county in October, 1849. The jury found a special verdict containing the facts appearing in evidence; and upon that verdict judgment was rendered for the plaintiff.

*H. Swift* and *J. Armstrong*, for the plaintiff.

*J. Thomson* and *J. C. McCarty*, for the defendant.

*By the Court*, BROWN, J. Tobias Stoutenburgh, the defendant's testator, died in June, 1846, seised of a farm in the town of Clinton in the county of Dutchess, containing 185 acres, of the value of $2500, charged with the payment of a mortgage to John Drury to secure $850. He left a will and appointed the defendant his executor, which will was admitted to probate on the 6th July, 1846, and letters thereon issued to the defendant. The executor was directed to sell and dispose of the real and personal estate within one year after the testator's death, and after the payment of his debts and funeral expenses, the proceeds were to be distributed to certain legatees in the will named. By a subsequent clause he gave to his wife Catherine the use of the real property during life, so that the power to sell could not be executed until after her death. Drury, the mortgagee, assigned the mortgage to Ambrose Wager, who filed his bill of foreclosure against the widow and heirs at law of the testator. To this proceeding the defendant and his wife—she being an heir—were made parties. A decree was obtained on the 28th of October, under which the farm was sold by a master for the sum of $1100, and the defendant became the purchaser. He immediately entered into the possession under the deed, where he still remains. The decree contained the usual clause authorizing either of the parties to purchase at the sale. The personal estate proved insufficient to pay the debts, as appears by a decree of the surrogate of the county of Dutchess upon a final settlement of the accounts of the defendant as executor, made on

Conger v. Ring.

the 24th of May, 1848. The plaintiff is one of the principal creditors, and he claims that the farm may be resold, and the proceeds applied to the payment of the debts.

If the relation which the defendant maintained towards the creditors of the estate of his testator were such that he could not purchase for his own benefit, the authority given in the decree, that either of the parties might purchase, can not take away their right to a resale. They were not parties to the foreclosure suit. The existence of simple contract debts due by the testator, the insufficiency of the personal estate to pay them, and the defendant's relation to the estate as the executor, were facts not revealed to the court; and any directions given in the decree with regard to the manner in which the sale should be conducted, or who might buy or be concluded by it, can not affect the executors. Besides; the sole purpose of such directions is only to avoid the effect of a supposed technical rule that a party to a suit can not become a purchaser under the decree without special permission, and not to authorize him to purchase and hold contrary to equity. (*Torry* v. *The Bank of Orleans,* 9 *Paige,* 649.)

Nor is the surrogate's decree for the final settlement of the executor's accounts a bar to the plaintiff's action. The proceedings were taken under § 52 or § 70 of the act in regard to "the duties of executors and administrators in rendering an account," &c. (2 *R. S.* 32 and 35,) and related exclusively to the receipts and disbursements of the executor, and to the charges and allowances to and against him in the administration of the personal estate. The 65th section of the same act declares that such final settlement shall be conclusive evidence of the following facts and no others. 1. That the charges for money paid, and for necessary expenses, are correct. 2. That the executor or administrator has been charged with all the interest for moneys received by him, and for which he is accountable. 3. That the moneys stated in the account as collected, are all that were collectable, on the debts stated in the account, at the time of the settlement. 4. That the allowances in such account for decrease, and the charges for increase in the value of the assets, were correctly made. It is quite manifest that the surrogate's

Conger *v.* Ring.

decree has no possible connection with the subject of the present action, except so far as it establishes the amount realized from the personal assets, and puts the plaintiff in a condition to proceed against the lands descended.

The defendant Ring, was intrusted with the power to sell the farm in question, and apply the proceeds to the payment of the debts and legacies. He was under no manner of obligation to take upon himself the burthen of executing the will. If he meant to pursue his own personal interests, and not those of the creditors and legatees, he had perfect liberty to do so. But when he had proved the will and obtained the letters, and assumed the burthen of the administration, that liberty was no longer his. What he might deem to be his own interests, instantly became subordinate to those of others ; for with his new character and position as executor, came duties and obligations which the law will not suffer him to avoid or disregard. After he had filed his inventory and discovered that the personal property was insufficient to pay the debts, he then became a trustee for the creditors, in respect to the real estate, and it was made his duty by § 1 of the act concerning "the powers and duties of executors and administrators, in relation to the real estate of their testator or intestate," (1 *R. S.* 39,) to apply to the surrogate for authority to mortgage or sell so much of the real property as would be necessary to pay the debts. He did nothing of the kind. Clothed as he was with the most ample powers to protect the trust property and preserve it for the creditors and legatees, he made no effort to exercise them or to avert or postpone the occurrence of the event which ultimately took away the principal means left by the testator for the payment of the debts and legacies. His mere omission to do what he should have done might not render him personally chargeable with the consequences, but when he becomes the purchaser at the sale, and the omission is coupled with an act which transfers the estate to himself at less than half its value, it becomes a serious question whether upon these facts alone—if there were no others of a suspicious character—he can be permitted to hold it.

The creditors of a deceased debtor are effectually restrained from taking any proceedings to charge the heir at law, or the devisee, in respect to the lands devised or descended, until the lapse of three years after the granting of letters testamentary or of administration. (2 *R. S.* 46, § 53.) For the first eighteen months of this period, the executor or administrator can not be compelled to render and settle his accounts. (*Id.* 32, § 52.) And until the account is rendered and a deficiency of personal assets is disclosed, no order can be obtained against him to show cause why he should not be required to mortgage, lease or sell the real estate for the payment of debts. (*Session Laws of* 1837, 536, § 72.) The facts disclosed by the pleadings and the special verdict in this case, give the transaction a most unfavorable aspect. If they do not of themselves afford sufficient reason to vacate the sale, they will at least serve to vindicate the wisdom and policy of the rule which forbids a trustee to become a purchaser of the trust property for his own benefit. The complaint charges that the defendant solicited Drury to foreclose the mortgage. That he refused because, as he said, he had no use for the money. This the answer does not deny, but the defendant says, that whatever was said by him to Drury was said in good faith. He is also charged in the complaint with having induced Mr. Wager to become the assignee of the mortgage, with a view to foreclose it. This he also denies, but he believes that he mentioned the subject to him. What subject? The subject of becoming the purchaser of the mortgage. He also denies that the purchaser of the mortgage acted as his attorney in the business of the estate, previous to the accounting before the surrogate, but he admits that he was the attorney upon such accounting, and when the decree was obtained which disclosed to the creditors the extent of their loss, and which is now set up as a legal barrier to a re-sale of the property. He also admits that he became aware of the insufficiency of the personal assets to pay the debts, a short time after the testator's death, and that it would be necessary to sell the lands. He gives as a reason for not selling under the will, that he found it so defective that a perfect title could not be given to a pur-

Conger *v.* Ring.

chaser under it, because the widow was living; but he assigns no reason for not proceeding to sell, by a surrogate's order under the statute. He denies that the mortgage was foreclosed without notice to the parties in interest, but says that it was well understood by the widow and heirs—amongst whom he and his wife are to be enumerated—that it would be for their interest to have it foreclosed, and they fully assented thereto. Two months after the death of the testator the bill was filed; two months thereafter the decree was obtained, and six weeks after that, the farm was sold; and the title passed to the defendant, under the master's deed, for less than half its value. All this was done while the courts of justice were closed against the creditors, before they could possess themselves of a knowledge of the true condition of their debtor's estate, and while their sole reliance against the waste and destruction of the estate was in the integrity and good faith of the defendant. A decree of the surrogate would have brought the farm into market upon terms advantageous and just to the mortgagee, the widow, creditors and legatees. The title would have been perfect. It would have been the interest, as it certainly was the duty of the executor, to make every reasonable effort to sell for the largest possible price that could be obtained. He chose however to vacate his true position; to become a purchaser instead of a vendor; to have the estate transferred to himself at the lowest price, instead of transferring it to another at the highest. I can not misunderstand the force of the facts to which I have referred. They are pregnant with meaning, and leave no manner of doubt in my mind that the assignment and transfer of the mortgage, the decree for its foreclosure, and the sale of the farm to the defendant, were all brought about by his own assent and procurement.

The rule that a trustee or person standing in a situation of trust and confidence, shall not purchase or deal with the subject of the trust, for his own benefit, is said to be absolute and universal. It is subject to no qualifications and to no exceptions. " The principle applies, however innocent the purchase may be in a given case. It is poisonous in its consequences. The

*cestui que trust* is not bound to prove, nor is the court bound to decide, that the trustee has made a bargain advantageous to himself. There may be fraud and yet the party may not be able to show it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the law does and will permit the *cestui que trust* to come at his own option, and without showing essential injury, to insist upon having the experiment of another sale. So that in fact, in all cases where a purchase has been made by a trustee, on his own account, of the estate of his *cestui que trust*, although sold at public auction, it is in the option of the *cestui que trust* to set aside the sale, whether bona fide or not." (*Story's Eq. Juris.* § 322. *Ex parte Bennet,* 10 *Vesey,* 385.) " If a trustee or executor compound debts or mortgages, or buy in for less than is due, he shall not take a benefit of it to himself; for when he takes the trust he takes it for the benefit of the *cestui que trust.* He can not be permitted to raise in himself an interest opposite to that of the party for whom he acts." (*Van Horne* v. *Fonda,* 5 *John. Ch. Rep.* 388. *Ex parte James,* 8 *Vesey,* 337.) " No trustee shall buy the trust property until he strips himself of that character, or by universal consent has acquired a ground for becoming the purchaser." " A trustee who is intrusted to sell and manage for others, undertakes, at the same moment in which he becomes a trustee, not to manage for the benefit and advantage of himself." (*Ex parte Lacey,* 6 *Vesey,* 625. 4 *Kent's Com.* 438. *Whichcote* v. *Lawrence,* 3 *Vesey, Jr., Sum.* ed. 740, *and note a. Vide also Davoue* v. *Fanning,* 2 *John. Ch. Rep.* 252.) The rule is to be enforced with unrelenting rigor, and is not to be limited in its application to those cases where the trustee himself sells the estate. Its object is to afford the *cestui que trust* the most ample protection against fraud and injustice, and remove out of the way of the trustee all inducement to profit by his superior knowledge, and all temptation to speculate upon property which he is under the most binding obligations to manage and sell to the best advantage of others. Purchasers at sales under judgments and decrees which are to be paid and extinguished with the proceeds

of the trust property, or those made under decrees, made to enforce the execution of the trusts of a deed, or other instrument, fall within the reason and scope of the rule ; for such sales afford as strong temptations and offer as wide a field for speculation and profit, as sales made by himself. They bring the interest of the trustee into direct conflict with that of the *cestui que trust*, and convert the relations of friendship and amity into those of hostility. We have seen that an executor who compounds debts and mortgages, or buys in claims against the estate for less than is then due upon them, shall not take the benefit to himself. He can not be permitted to raise in himself an interest in opposition to the person for whom he acts. And this is said to be a fundamental doctrine in equity. So I apprehend when an executor, with power to sell under the will, or whose duty it is to exert that power with the aid of a surrogate's order, upon becoming aware of the insufficiency of the personal assets, purchases the trust property at a sale under a mortgage or other incumbrance, for less than its value, he must take it for the benefit of those for whom he is bound to act, provided they assert their right to have it so appropriated, within a reasonable time. Such I understand to be the law of this court. In *Rogers* v. *Rogers*, (3 *Wend.* 503,) the court of errors decided that an executor, by virtue of his office, becomes a trustee for the devisees and creditors of the testator, whenever it is ascertained that the personal property is insufficient to pay the debts. And that he will not be permitted to sell the real estate of his testator, under a judgment held by him, and become himself the purchaser. In *De Caters and wife* v. *Le Ray De Chaumont and others*, (3 *Paige*, 178,) a decree had been obtained to carry into effect the provisions of the trust deed and for a sale of the trust estate by the defendant Le Ray De Chaumont, who was the trustee. He made a special application to the chancellor, for leave to become a purchaser at the sale, upon the ground that the estate was largely indebted to him for advances made on its account. The chancellor denied the application, assigning as the principal reason that most of the creditors were foreigners, residing in France,

Belgium and Holland. That the trustee was presumed to have made himself acquainted with the lands which constituted the trust estate, and if permitted to purchase for himself, " he would have it in his power to obtain the best parts of it upon his own terms, merely by withholding information, which the *cestuis que trust* could never have it in their power to obtain. And that if he, by virtue of his trust, had superior advantages of information in respect to the situation and value of the property, so that he could not come to the sale upon terms of equality with other bidders, the court would not put him in a situation where his duty and his interest would come in conflict." In *Van Epps and wife* v. *Van Epps*, (9 *Paige*, 237,) the complainants were the owners of a farm in Greenbush, subject to a mortgage to secure $5000, with the interest, to the defendant, and by him assigned to the New-York Life Insurance and Trust Co. They sold the farm to Spencer, who assumed the payment of the money due on the mortgage, and to secure $6000 of the purchase money with the interest, executed another bond and mortgage upon the same premises, to the defendant. He thereupon gave to the complainants a written declaration under his hand and seal, that he received such bond and mortgage for the use and benefit of the complainants, to receive the interest and pay over to them during their lives, &c. Spencer became insolvent, and the Trust Company foreclosed the prior mortgage, and at the sale the defendant became the purchaser, for $6450. The judgment of the court was, that as the defendant held the junior mortgage as trustee for the complainants, he could not purchase at the sale under the decree to foreclose the senior mortgage for his own benefit, to the prejudice of his *cestuis que trust*. In *Torrey* v. *Bank of Orleans*, (9 *Paige*, 649,) the rule is again recognized and reasserted, and the court declares it to be a settled principle of equity, of universal application, that a person placed in a situation of trust and confidence in reference to the subject of the sale can not become the purchaser on his own account. That no person can be permitted to purchase an interest in property where he has a duty to perform inconsistent with his character

Conger *v.* Ring.

as purchaser. These authorities are decisive of the main question involved in this cause, and entitle the plaintiff to the relief claimed.

The judgment rendered at the special term must be reversed, and the plaintiff is entitled to recover his costs from the defendant. Unless the defendant elects, within sixty days after service of a copy of the decree, to pay the debt of the plaintiff referred to in the pleadings, with the interest and costs of this action, then the plaintiff will also be entitled to a decree or order that the farm and premises referred to in the pleadings be re-sold, and the proceeds applied 1st. To the payment of the amount bid by the defendant at the master's sale, with the interest; 2d. To the payment and satisfaction of such sum as the widow would have been entitled to receive for her dower; and 3d. To the payment of the debts of the testator.

The widow and legatees make no complaint, and do not ask for a re-sale. They are not therefore necessary parties. The creditors are necessary parties, unless the complaint is amended by inserting therein the usual clause, that the plaintiff prosecutes as well on behalf of himself as of all the other creditors who may elect to come in under the decree, and contribute to the expenses of the litigation. (*Story's Eq. Plead.* 99. *Hallet* v. *Hallet*, 2 *Paige*, 19.) Leave is given to the plaintiff to make this amendment, without costs, or further notice to the defendant. (*Code*, 170.)

[DUTCHESS GENERAL TERM, July 7, 1851. *Morse, Barculo* and *Brown*, Justices.]