South Baptist Society of Albany *v.* Clapp.

---

THE SOUTH BAPTIST SOCIETY in the city of Albany *vs.* HULDAH CLAPP and others.

The plaintiff, a religious society, being desirous of purchasing a lot of land from M., applied to him, through C., the president of its board of trustees, to purchase the same. M. declined selling to the plaintiff, because it was a religious corporation, but was willing to sell to C., and take a bond and mortgage from him. C. accordingly took a deed of the lot, from M. to himself, and gave M. his bond and a mortgage on the premises to secure the purchase money. C. then conveyed the land to the plaintiff, by deed, subject to the mortgage; taking back a mortgage from the plaintiff upon the lot, for the amount of the purchase money. The plaintiff failing to pay the interest upon the mortgage given by C. to M., C. foreclosed, by advertisement, the mortgage given to himself, and sold the premises, and bid them in himself, and afterwards died. M. subsequently assigned to J. C. the mortgage given to him by C., and J. C. was proceeding to foreclose the same, for the benefit of C.'s heirs. In a suit by the plaintiff, praying for an injunction to restrain the prosecution of such foreclosure suit, and that the mortgage from the plaintiff to C., and the foreclosure and sale thereunder, might be decreed void as against the plaintiff; or that the plaintiff be permitted to redeem, &c.:

South Baptist Society of Albany *v.* Clapp.

*Held,* 1. That the purchase of the premises by C. from M. was fair and honest, and was not inconsistent with any duty C. owed the plaintiff.

2. That C. purchased the premises in his own right, and was in no respect the trustee of the plaintiff.

3. That the mortgage given by the plaintiff to C. was valid, and legally binding ; and that the foreclosure thereof by advertisement, the property having been bid off by C. and the sale having been conducted fairly and in good faith, was a bar to the plaintiff's equity of redemption.

Where land is conveyed by deed, and a mortgage is given by the purchaser, upon the land conveyed, to secure the payment of the purchase money, both instruments are parts of the same transaction, and should be considered together, although bearing different dates.

It is not necessary the deed and mortgage should bear the same date, if both are made in pursuance of the same contract.

Where a corporation, at the time of executing a mortgage, had not adopted any corporate seal, by resolution, and had no seal, but the trustees adopted the seal affixed opposite the name of the president, as the seal of the corporation, for the time being ; *Held* that this was sufficient.

Where a mortgage is executed by all the trustees of a religious society, a majority being present a part of the time when it is executed, the act is obligatory upon the society, although no formal resolution of the board of trustees, authorizing the mortgage, was previously passed.

No order of the chancellor was necessary, to enable a religious corporation, purchasing land, to execute a mortgage for the purchase money.

THIS was an appeal, by the plaintiff, from a judgment entered upon the report of a referee. The complaint alleged that on September 13, 1842, the plaintiff became, and had ever since been, a religious corporation, under the general act to provide for the incorporation of religious societies, passed April 5, 1813. That shortly prior to May 27, 1843, the plaintiff, desiring to purchase from Archibald McIntyre the premises in question and described in the complaint, applied to him through Reuel Clapp, the president of their board of trustees, to sell the premises to the plaintiff. That McIntire declined selling to the plaintiff, and taking a mortgage back for the purchase money as was proposed, because, in case of their failing to pay the same, he would be unwilling to foreclose it against a religious society, but was willing to sell to Mr. Clapp, and take his bond and mortgage for the purchase money. That Clapp, being president of the plaintiff's board of trustees, and acting for the plaintiff, on May 17, 1843,

South Baptist Society of Albany *v.* Clapp.

took from McIntyre and wife a deed to himself, dated May 27, 1843, and thereupon delivered to McIntyre, as security for the purchase money, his bond and mortgage on said premises, conditioned to pay $3500 at any time before June 1, 1853, and interest semi-annually on 1st December and June; that this mortgage was recorded May 30, 1843. That immediately after this conveyance, and in pursuance of an agreement had previously between Clapp and the plaintiff, Clapp and his wife, by deed, dated, executed and delivered on the 27th of May, 1843, conveyed said premises to the plaintiff; that such conveyance was by the terms of the deed made subject to the mortgage from Clapp to McIntyre for the purchase money, and the payment whereof the plaintiff did thereby assume; that this deed was recorded May 30, 1843. That although these papers were executed, &c., for the sake of legal form, and on account of McIntyre's unwillingness to take from a religious society a mortgage, the transaction was intended to be, and was in substance, a purchase by the plaintiff from McIntyre, and a security to him for the purchase money, the said Clapp acting in the premises as president and agent for the plaintiff's corporation, which he then was, and that he continued to be such president till August, 1846. That on the 29th of May, 1843, Clapp, as president of the plaintiff's corporation, on his own suggestion, and seven others, who were trustees, at Clapp's request, executed and delivered, under their hands and seals, a mortgage to Clapp on these premises, a copy of which was annexed to the complaint. That this mortgage was executed without the authority or direction of the board of trustees, and without an application for leave to mortgage said premises, to any court, and without any order of the chancellor, or any court, and that the seal thereto annexed was not the corporate seal of the society. That the plaintiff paid the interest on the mortgage to McIntyre, up to and including December 1, 1847; that the plaintiff being unable to pay promptly that which became due June 1, 1848, Clapp, on the 3d June, 1848, commenced foreclosing, by advertisement, the mortgage to himself, and sold the premises thereunder on the 28th of August, 1848, and bid them in for $3700. That the plaintiff then supposed Clapp had

a right to foreclose and sell, and therefore interposed no obstacles thereto. That at the time of such sale there was, and had for a long time been, and still is on said premises, a building erected by the plaintiff, which, with the premises, were then and are now worth about $12,000. That Clapp died January 17, 1850, intestate, leaving a widow, Huldah Clapp, and four children, his heirs at law; that his widow and Wm. G. Howard are his administratrix and administrator; that Joseph Carey, soon after Clapp's death, was appointed general guardian of the three infant children; that the adult child, O. W. Clapp, on the 8th of March, 1850, conveyed his interest in his father's estate to Wm. G. Howard, as trustee. That Reuel Clapp paid to McIntyre the interest on his bond and mortgage from June 1, 1848, to and including December 1, 1849, and his representatives had paid it since, and that all such payments had, prior to November 30, 1850, been indorsed by McIntyre on said bond; that the plaintiff believed Clapp or his representatives or heirs had paid the taxes on said premises for 1848 and 1849, but what amount the plaintiff was not informed. That the plaintiff was not advised till about November, 1850, that said mortgage to Clapp, and its foreclosure and the sale thereunder, were void as against the plaintiff, and that the title to said premises was still in the plaintiff, and therefore permitted the payment of taxes and interest as aforesaid to be made by Clapp and his estate. That prior to November 30, 1850, the guardian of the infant heirs, and Howard as trustee for O. W. Clapp, had agreed to sell said premises to a society of Jews, who, being dissatisfied with the title of Clapp's heirs thereto, Carey and Howard, on behalf of said heirs, applied to McIntyre to assign Clapp's bond and mortgage to some third person, to be designated by them, for the purpose of enabling them, by a foreclosure thereof, to perfect the title for said Jews. That on November 30, 1851, he accordingly assigned the same to the defendant Callanan for such purpose; that said Callanan took such assignment solely at the request of Carey and Howard, and to foreclose the same immediately after the 1st of December, 1850, when the next payment of interest should be due; that Callanan holds the same

for the benefit of said heirs or personal representatives of Clapp, and for the purpose of enabling them to obtain a title to said premises. That on the 2d of December, 1850, (the 1st being Sunday,) the plaintiff caused a tender to be made to Callanan of all the interest then due on the said bond and mortgage held by him as aforesaid; that he, in order to effect the aforesaid purpose, and by direction of Carey and Howard, refused to receive the same. That on December 17, 1850, Callanan commenced foreclosing said mortgage by advertisement; that Clapp's personal representatives had, on December 2, 1850, and have had ever since, sufficient assets of the estate to pay said interest, and that they purposely omitted to pay the same to Callanan to enable him to foreclose said mortgage. That Carey as guardian, and Howard and O. W. Clapp, claimed that the fee of said premises was in Clapp's heirs by virtue of his said purchase on said foreclosure sale, and that Huldah Clapp claimed a right of dower therein as widow of Reuel Clapp. That they were entitled to the possession thereof, and now hold the same and refuse to deliver up the same to the plaintiff. That on December 5, 1850, the plaintiff made a written offer, a copy of which is annexed to complaint as schedule B, to Clapp's personal representatives and to Carey as guardian of the infant heirs, which they had not accepted; that the plaintiff could not make such offer to O. W. Clapp, by reason of his continued absence from this country. That offer was as follows: "The South Baptist Society in the city of Albany hereby offers to pay and fully discharge the bond and mortgage heretofore executed by Reuel Clapp, now deceased, to Archibald McIntyre, upon the premises conveyed by said Clapp to said South Baptist Society in South Pearl street, and which bond and mortgage was assigned to Messrs. Callanan and Gibbs by said McIntyre, on or about the 30th November last, and also to pay to the personal representatives of said Reuel Clapp, or any person entitled to receive the same, all interest upon the aforesaid bond and mortgage, and all taxes upon said premises which have been paid by said Clapp or his personal representatives since the first day of May, 1849, and which have not been re-

paid by said society to him or them; provided, and upon condition, that the heirs and the widow of the said Clapp shall release and convey to the said South Baptist Society by a quitclaim deed, all their alleged interest of, in and to the said premises. This offer is made upon the supposition and under the belief that the said premises have not been conveyed by the widow or heirs of said Clapp, and that no other person or persons or any society or corporation have acquired or pretend to have acquired any title to the said premises as purchasers under or from the heirs or widow of said Clapp, or from his representatives aforesaid, and is also made for the purpose of saving and avoiding the necessity of any recourse to legal proceedings on the part of said society for the recovery of the possession of said premises, and is not to be construed as recognizing any title thereto in said Reuel Clapp, or his heirs or representatives, or that the title to said premises is in any person or corporation other than the said South Baptist Society." The complaint further alleged that said foreclosure by Callanan was still proceeding, and the plaintiff believed Callanan would cause said premises to be sold on the 19th March, 1851, unless restrained by injunction, and that such sale would produce great injury to the plaintiff. That since August 28, 1848, Clapp, till his death, and his heirs since, had had possession and use of said premises; that such use and occupation had been and still were worth $800 per annum; that such sum could have been obtained therefor, and that said Clapp and his heirs had actually received divers sums as rent therefrom since August 28, 1848, and that they were now occupied by sundry tenants under said heirs. The plaintiff insisted, (1.) That there was nothing due on the bond and mortgage held by Callanan, the interest due on 1st December, 1850, having been duly tendered to him. (2.) That the mortgage from Clapp as president and the other persons to Clapp was void, because Clapp, as president and trustee of the plaintiff's corporation, had no right to procure or execute to himself such lien on the corporation or trust property, and because the same was not authorized by the board of trustees, nor permission to execute the same given by the chan-

cellor or any court, and that the foreclosure and sale thereunder was void as against the plaintiff, for these reasons, and that no title to the premises passed to Clapp by such sale. (3.) That the plaintiff was the owner in fee of said premises and entitled to possession thereof, and to the rent which might have been received therefrom since August 28, 1848, and to such amount of rent as the use and occupation thereof during the pendency of this suit should be worth. (4.) In case the court should adjudge said mortgage and sale not void, that the plaintiff had an equitable right to be restored to the legal ownership of said property, on refunding all necessary and proper payments made on account thereof by Clapp or his representative or heirs, with lawful interest thereon, because said mortgage was procured and made to said Clapp while he was acting as trustee for said plaintiff. The relief demanded was as follows: 1. An injunction restraining Callanan from continuing said foreclosure, or disposing of said bond and mortgage, or instituting any proceedings to collect the same. 2. That said mortgage from Clapp as president and the other persons to Clapp, and the foreclosure and sale thereunder, be decreed void as against the plaintiff, and be delivered up to be cancelled, or that the plaintiff be permitted to redeem or release said premises from said mortgage sale, on making such payments as were before offered, or on such other terms as the court might impose. 3. That the plaintiff be adjudged to be the owner in fee of said premises, and entitled to the possession, and all the rents and profits which might have been received therefrom since August 28, 1848, and for an account to be taken thereof, and the amount so ascertained decreed to be paid to the plaintiff, and the defendants decreed to deliver up possession, subject to the mortgage held by Callanan; that a receiver be appointed, and for other and further relief.

The defendants put in an answer denying most of the allegations in the complaint; and a reply was filed by the plaintiff. The cause was referred to Duncan McMartin, Esq., as sole referee, to hear and determine the same. And it having been brought to a hearing before the said referee, he made his report,

CASES IN THE SUPREME COURT.

by which he found the following facts : That on the 13th day of September, 1842, the plaintiffs became, were, have ever since been and now are a religious incorporation under the act to provide for the incorporation of religious societies, passed April 5th, 1813. That the plaintiffs desired to purchase the premises in question, which are particularly described in the complaint, from Archibald McIntyre. And that Reuel Clapp requested Mr. McIntyre to sell said premises to the plaintiff. That McIntyre refused to sell the premises to the plaintiff and take back a mortgage from them for the purchase money. That Clapp purchased said premises from McIntyre for $3500, and the same were conveyed to said Clapp by deed, dated and acknowledged on the 27th day of May, 1843, and Clapp gave back his bond and mortgage for the whole purchase money, dated May 27th, 1843, and acknowledged the same day, conditioned to pay $2500 at any time or times before June 1st, 1853, and the interest semi-annually on the first of December and June thereafter. That Reuel Clapp conveyed the same premises to the plaintiff by deed, dated and acknowledged May 27th, 1843, and the conveyance was made by the terms of the deed, subject to the mortgage from Clapp to McIntyre, for the purchase money; and the plaintiff, by the terms of the deed, although the corporation did not execute it, and by accepting the deed, assumed to pay that mortgage. The consideration mentioned in the deed was $3500. That Clapp, at the time the deeds and mortgages mentioned in the complaint were executed, was president of the board of trustees of the plaintiff, and was a member of the plaintiff's church and society and a trustee of the plaintiff's corporation, and continued so to be until long afterwards. That a mortgage from the plaintiff, by Clapp as president and seven of the trustees of the church, to said Reuel Clapp individually, was executed on the 29th day of May, 1843, without any application to the chancellor, or any other court, and without any order of the chancellor permitting or directing the same, and without a previous formal resolution by the board of trustees. That this mortgage was given to Clapp to secure him, as was stated in the condition of the mortgage to McIntyre.

The consideration stated in the mortgage was $3500. That all the trustees except one signed the mortgage, and that one was John McCardle, who had never consented to be elected, nor to serve as such, and he never acted as trustee except by attending one meeting, for the purpose of resigning, and by subsequently sending in his written resignation as trustee. That, in executing the mortgage, the trustees executing it acted as a board of trustees of the plaintiff. All who signed it were not present at the same time, but a majority of the trustees were present a part of the time when it was executed. That the plaintiff had not adopted any corporate seal by resolution, and had no seal previous to the execution of the mortgage. That by executing this mortgage the said trustees adopted the seal affixed opposite to the name of the president, as the seal of the corporation, for the time being. The mortgage from the plaintiff to Clapp contained the condition that if the plaintiffs or their successors should well and truly pay or cause to be paid unto the said party of the second part, (Reuel Clapp,) his certain attorney or attorneys, heirs, executors, administrators or assigns, the sum of three thousand five hundred dollars, being the same original consideration money secured as aforesaid to the said Archibald McIntyre by the mortgage of the said Reuel Clapp and wife, it being understood that the purchase of the said premises by the said Reuel Clapp from the said Archibald McIntyre was made for the use and benefit of the parties of the first part, and the payment of which the said parties of the first part did thereby agree to assume, and to save the said Reuel Clapp, his heirs, executors and administrators from every part of the principal and interest of the said purchase money entirely harmless, in the manner particularly specified in the condition of a bond bearing even date therewith, then the said mortgage to be void. But if default should be made in the payment of all or any part of the said principal sum of $3500 or the interest thereof, and the said Reuel Clapp should not be saved harmless from the payment of the same to the said Archibald McIntyre, or the interest thereof, at the time or times when the same ought to be paid as aforesaid, that

then the parties of the second part might sell the same at public vendue, &c. That the deed from McIntyre to Clapp was recorded in Albany county clerk's office, May 30, 1843, at 3 o'clock and 15 minutes P. M. That the mortgage from Clapp to McIntyre was recorded in the same office, May 30, 1843, at 3 o'clock and 18 minutes P. M. That the deed from Clapp to the plaintiff was recorded in the same office, May 30, 1843, at 3 o'clock and 20 minutes, P. M.; and that the mortgage of the plaintiff to Clapp was recorded in the same office, May 30, 1843, at 3 o'clock and 20 minutes P. M. That the plaintiff neglected to pay the interest which fell due on the 1st day of June, 1848, to Reuel Clapp or Archibald McIntyre, and Clapp then foreclosed said mortgage to him, by advertisement. That notice of said foreclosure and sale was duly given to the plaintiff, by serving a copy of said notice on them, as required by statute. That the premises described in the mortgage were sold pursuant to the notice, and the mortgage foreclosed, on the 28th day of August, 1848, and bid in by Clapp for $3700; and the affidavits of publication, posting and serving notices and of sale were duly made, filed and recorded. That the plaintiff and its trustees supposed that said mortgage was a valid mortgage, and that said Clapp had a right to foreclose and sell the premises under it, and under that belief interposed no obstacles. That the plaintiff purchased the premises of Clapp, as hereinabove stated, for the purpose of erecting a church edifice thereon. That the corporation erected a building thereon for the purpose of religious worship, and used it for that purpose from the time of its erection until it was sold in 1848. That Reuel Clapp died 17th January, 1850, intestate, leaving him surviving his widow, Huldah Clapp, and four children, who are his heirs at law. That the widow and William G. Howard, the defendants in this suit, were duly appointed administratrix and administrator of his estate, and took upon themselves the administration thereof. That soon after Clapp's death Joseph Carey was appointed general guardian of the three infant children. That the adult child, Oliver W. Clapp, by an instrument dated March 8th, 1850, conveyed all his interest in his father's estate to the defendant Howard, in trust, to receive

South Baptist Society of Albany *v.* Clapp.

the rents and profits, and apply them, &c., according to law. That Reuel Clapp paid the interest on his mortgage to McIntyre from June, 1848, to and including December 1st, 1849, and his representatives have paid since that time, and that all such payments prior to November 30th, 1850, have been indorsed by McIntyre on Clapp's bond. Before the 1st June, 1848, the plaintiff paid interest to Clapp and he paid to McIntyre, except in two or three cases, when the plaintiff paid the interest to McIntyre. McIntyre gave receipts to Clapp; and he gave receipts to the plaintiff. That prior to November 30th, 1850, Carey and Howard, on behalf of the heirs of Clapp, had agreed to sell said premises to a society of Jews ; and that the Jews being dissatisfied with the title, required them to foreclose the mortgage held by McIntyre. That on the 30th day of November, 1850, McIntyre assigned the bond and mortgage held by him on these premises to the defendant Callanan, who is now the assignee and owner thereof. Callanan paid for the mortgage with money belonging to the infant defendants. Callanan had no interest in the mortgage, except as agent. Carey, the guardian, furnished him with money to pay for the mortgage, and he took an assignment to himself. That on the 17th December, 1850, the defendant Callanan commenced proceedings to foreclose said mortgage by advertisement; that the personal representatives of Clapp had on the 2d day of December, 1850, and have ever since had, sufficient assets in their hands belonging to Clapp's estate to pay the interest then due, and had purposely omitted to pay the same, to enable the defendant Callanan to foreclose the mortgage. That said Carey, as general guardian of said infant heirs, and said Howard and Oliver W. Clapp, claim the fee of these premises to be in them ; and Mrs. Clapp claims a right of dower therein ; and they claim possession and refuse to deliver up possession to the plaintiff. That in December, 1850, before the commencement of this suit, the plaintiff caused an offer in writing to be made to the personal representatives of Clapp, and to Joseph Carey as guardian of the infant heirs, and that they have not accepted the same. That the plaintiff could

not make such offer to Oliver W. Clapp, by reason of his continued absence from the country. That since August 28th, 1848, Reuel Clapp, until his death, and his heirs since, have had possession of the premises in question, and that they are now occupied by sundry tenants, under leases. On the 2d day of December, 1850, a tender of the interest then due on the mortgage to McIntyre was made to the defendant Callanan by the plaintiff. He declined to receive it, stating that he did not know the plaintiff in the matter, as they had not given the mortgage, and had no interest in the mortgaged premises, and that he was not bound to receive it of them; neither the identical money tendered nor that amount was kept on hand by the treasurer; but he possessed the ability to raise the money, and was ready and willing to pay the same at any time when it would have been received. John McCardle, the only one of the trustees who did not sign the mortgage, was elected one of the trustees. He was not present when the mortgage was given, and had no notice that a mortgage was to be given to Reuel Clapp. But he was elected without his previous consent. He objected to being elected, and he met but once with the trustees after his election and before his resignation, and he met then with the express purpose of telling them that he would not serve, and for no other purpose. He never took part in any manner as trustee, and did not accept. the place. He afterwards sent in a written resignation, which was dated 21st August, 1844, and delivered to the plaintiff's board of trustees on or about the date thereof. The conclusion of law at which the referee arrived from these facts was, that the plaintiff's mortgage, given to Reuel Clapp, was valid, although no order authorizing the mortgage was made by the chancellor; that the mortgage was regularly foreclosed, and that the title to the mortgaged premises became vested in Reuel Clapp by the sale to him under the foreclosure; that although he was a trustee of the plaintiff at the time of the foreclosure and purchase by him, the title did not vest in him for the benefit of the plaintiff, and that the title to said premises was in the heirs of said Clapp; and that the defendants were entitled to judgment against the plaintiff.

*A. Dean,* for the plaintiff.

*R. W. Peckham,* for the defendants.

*By the Court,* PARKER, J.   It is important to ascertain, at the outset, whether Reuel Clapp, when he took the deed from McIntyre, held the property in his own absolute right, or as trustee for the plaintiff.   It is contended by the plaintiff's counsel that Reuel Clapp was the agent of the plaintiff in making the purchase, and took the deed to himself under such circumstances as to make him a trustee holding for the benefit of the plaintiff. It is not claimed, nor does it appear by the facts found by the referee, that there was any express trust ; but it is supposed to be a proper case for adjudging the existence of an implied trust in favor of the plaintiff.

The principle of equity is well settled that a person who is placed in a situation of trust or confidence in reference to the subject of a sale, cannot be a purchaser of the property, on his own account.   No person can be permitted to purchase an interest in property when he has a duty to perform inconsistent with the character of a purchaser.  (*Torrey* v. *Bank of Orleans,* 9 *Paige,* 650.   *Hawley* v. *Cramer,* 4 *Cowen,* 736.   *Van Epps* v. *Van Epps,* 9 *Paige,* 237.   *Parkist* v. *Alexander,* 1 *John. Ch.* 394.   *Conger* v. *Ring,* 11 *Barb.* 356.)  I do not understand from the facts in this case that Reuel Clapp purchased from McIntyre as the agent of the plaintiff.   It is true the plaintiff desired to purchase the property, and Clapp requested McIntyre to sell to the corporation, and he refused because he was unwilling to take a mortgage from the plaintiff for the purchase money.   Clapp then became the purchaser, and gave his own mortgage to McIntyre.   This purchase was undoubtedly made with a view to benefit the plaintiff.   By the arrangement made, Reuel Clapp, instead of McIntyre, gave the plaintiff credit for the purchase money, upon mortgage.   The plaintiff found in Reuel Clapp a friend who would do for the corporation what McIntyre refused to do, and without whose aid the corporation could not have purchased the property.   He assumed for it a

responsibility, placing himself between McIntyre and the plaintiff. He was the plaintiff's partner and friend, but not its agent. He did not obtain the conveyance by any fraud. (*Sweet* v. *Jacocks*, 6 *Paige*, 355.) His purchase was not inconsistent with any duty he had to perform. (9 *Paige*, 650.) He could have had no personal interest or selfish motive in making the purchase; for he sold to the plaintiff for the same price he paid. The transaction was not one by which Clapp was to be benefited, but, on the contrary, one that might subject him to trouble and liability without any remuneration. It was not a purchase made with the money of the plaintiff. (*Voorhees* v. *Presbyterian Church of Amsterdam*, 8 *Barb*. 135.) The plaintiff advanced no funds, and there was no resulting trust. (2 *R. S.* 13, 3*d ed*.) The whole transaction was an open and a fair one. Clapp did not purchase to hold for the plaintiff, but to convey to the society, and he conveyed to the corporation accordingly. Assuming that it was agreed beforehand that Clapp should purchase from McIntyre and give his bond and mortgage for the purchase money, and should then sell to the plaintiff and take back a like mortgage from the plaintiff, the whole transaction was fully carried out according to the agreement, and the plaintiff has been subjected to no loss or inconvenience by any act of Clapp or his representatives. I hold, then, that Reuel Clapp purchased in his own right, and was in no respect the trustee of the plaintiff.

On the 27th of May, 1843, Clapp deeded to the plaintiff, and on the 29th of the same month took back the mortgage from the plaintiff. The deed appears to have been dated on Saturday, and the mortgage on Monday. It is supposed this discrepancy in date warrants the presumption that they were not parts of the same transaction. But there is nothing on this point left to presumption. The referee finds that "this mortgage was given to Clapp to secure him as is stated in the condition of the mortgage to McIntyre." It is not necessary the deed and mortgage should bear the same date. If the mortgage was given to secure the purchase money of the deed, and so the referee has found, they are parts of the same transaction. (*Cunningham* v. *Knight*, 1 *Barb. S. C. Rep.* 406. *Kettle* v. *Van Dyck*, 1

*Sandf. Ch. Rep.* 76.) The lien for the purchase money existed till the mortgage was executed. The deed and mortgage must therefore be considered together.

Several objections are made by the plaintiff's counsel to the validity of this mortgage, which it is necessary to consider. 1. The first is that it had no common seal. The referee finds that the plaintiff had not adopted any corporate seal by resolution, and had no seal previous to the execution, but that the trustees adopted the seal affixed opposite to the name of the president as the seal of the corporation, for the time being. This was undoubtedly sufficient. (21 *Pick.* 417. 6 *Dana*, 37.)

2. The second objection is, that there was no order or resolution of the board of trustees authorizing the mortgage. All the trustees, except one who had resigned, executed the mortgage. The referee finds that in executing the mortgage the trustees acted as a board of trustees of the plaintiff, and that though all who signed it were not present at the same time, yet that a majority of the trustees were present a part of the time when it was executed. The finding of the referee on this question of fact makes the act as obligatory upon the plaintiff as if a formal resolution had been previously passed.

3. It is next objected that the mortgage was void because it had not been authorized by an order of the chancellor, according to the provisions of 3 *R. S.* 210, § 11. I am satisfied such an order was never necessary to enable a religious corporation, purchasing land, to execute a mortgage for the purchase money. The church never owned the land, except subject to the mortgage. It was a question of purchase, rather than of sale. The statute is only applicable to a case where the church is the owner of real property ; and its object is, that the court may control the disposition of the proceeds, and prevent a misapplication of trust funds. (*The Dutch Church* v. *Mott*, 7 *Paige*, 83, 84. 1 *R. S.* 599, § 1.)

If no mortgage whatever had been executed by the plaintiff, Clapp would still have had an equitable lien for the purchase money, (2 *Story's Eq. Jur.* § 1217,) which he might have enforced by action of foreclosure, and, as against the plaintiff, it

would have been as effectual as a mortgage formally executed under the order of the court. It could not, however, have been foreclosed by advertisement.

If I am right in the conclusions to which I have come, that Clapp was not a trustee for the plaintiff, and that the mortgage was valid and legally binding, it follows that the subsequent foreclosure by advertisement, the property having been bid off by Clapp and the sale having been conducted fairly and in good faith, was a bar to the plaintiff's equity of redemption.

The judgment entered on the report of the referee must therefore be affirmed, with costs.

[ALBANY GENERAL TERM, May 2, 1853. *Parker, Wright* and *Harris,* Justices.]