# 𝕷𝖆𝖜 𝖆𝖓𝖉 𝕰𝖖𝖚𝖎𝖙𝖞

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

———————•♦•———————

## DEBORAH ANN TERWILLIGER vs. JAMES H. BROWN and others.

A trustee, making a sale of the trust property, cannot become a purchaser on his own account, either directly or through the agency of another.

Thus, if an executor, selling property under the order of the surrogate, for the payment of debts, becomes himself interested in a purchase thereof made by one employed by him to act as auctioneer, and who thus becomes his sub-agent, a residuary devisee may come into a court of equity, and set aside the sale, and have the property resold.

Upon a sale of lands by an executor, under the order of the surrogate, for the payment of debts, B., officiating as auctioneer, struck off the premises to himself. Before the confirmation of the sale, the payment of the purchase money, or the delivery of the deed to B., an arrangement was made between him and the executor, by which the latter became equally interested with the former in the purchase of the property. The sale was subsequently confirmed by the surrogate, and a conveyance of the premises executed by the executor to B., who, on the same day, conveyed an equal undivided half of said premises to the executor. *Held* that neither B. nor the executor could be protected against the claims of those interested in the estate directed to

be sold; the purchase being a palpable violation of the statute, and in direct hostility to the well established principle, that a trustee shall not be allowed, directly or indirectly, to speculate out of the trust property, or to become a purchaser thereof for his own benefit.

THIS was an action brought by a residuary devisee, to set aside a sale of certain real estate of Joseph Ellis, deceased, made by order of the surrogate of Ulster county, upon the application of David Ellis, the executor of said Joseph, for the payment of debts.

The cause was tried at the Ulster circuit on the 21st day of January, 1863, by the court, without a jury. The facts found by the court, and the conclusions of law, are substantially as follows: That the will of Joseph Ellis, deceased, was duly admitted to probate by the surrogate of the county of Ulster, and letters testamentary issued thereon on the 11th day of June, 1861, to David Ellis. That on the 1st of day October, 1861, an order was made establishing the debts at $276.23, and a further order made, upon the same day, authorizing the executor, David Ellis, to sell the real estate for the non-payment of debts. That on the 25th day of November, 1861, the defendant Brown, officiating as auctioneer, struck the premises off to himself for the sum of $615. That after the auction, and before the presentation of the report to the surrogate, and before the confirmation of such sale by the surrogate, before the payment of the purchase money, and before the delivery of the deed to Brown, an arrangement was made by and between the said Brown and David Ellis, the executor, by which the said Ellis became equally interested with the said Brown, in the purchase of the property. That on the 10th day of December, 1861, the defendant David Ellis, presented his report of sale to the surrogate, whereby he reported that the property had been sold to James H. Brown, for the sum of $615; that fifteen per cent had been paid down, and the balance was to be paid upon the delivery of the deed; that on the said 10th day of Decem-

ber, the surrogate made an order confirming said sale, and directing a conveyance to the purchaser. That on the 14th day of December, 1861, David Ellis, as executor, executed a deed to James H. Brown for said premises, for the consideration therein expressed of $615; that on the same day the said Brown, by deed, conveyed the one equal undivided half part of said premises to said David Ellis, for the consideration as therein expressed of $307.50. Both deeds were acknowledged on the same day, and before the same officer. That on the 10th day of January, 1862, the defendants Ellis and Brown, with their wives, in consideration of $600, conveyed by quit-claim to the defendant Sarah Jane, wife of David Berrian, about five acres of the premises of Joseph Ellis, deceased, and purchased upon said sale. That on the 22d day of January, 1862, the defendants Brown and Ellis, with their wives, for the consideration of $400, sold and conveyed to Hannah Deyo another portion of said premises. That the balance of the premises, about thirty-three acres, are still in the hands of Brown and Ellis, owned by them. That the defendants have realized in money and securities, upon the aforesaid sales of portions of said premises, and also from the proceeds of wood, timber and hoop poles as aforesaid, about the sum of $900.

From the foregoing facts the judge drew the following conclusions, to wit: That the plaintiff, Deborah Ann Terwilliger, was entitled to the one undivided seventh part of the property whereof Joseph Ellis died seised. That the sale and conveyance by David Ellis, the executor, to James H. Brown, and the conveyance by Brown to Ellis, of the undivided half part thereof, were both fraudulent and void as against the plaintiff, Deborah Ann Terwilliger, and the devisees of the said Joseph Ellis, deceased. That as to so much of the real estate of Joseph Ellis, deceased, as was not conveyed to Hannah Deyo and Sarah Jane Berrian, the plaintiff, Deborah Ann Terwilliger, was enti-

tled to the one undivided seventh part thereof, in fee, in the same manner and to the same extent as if such executor's deed had never been executed. That the defendants Brown and Ellis should account and pay over to the plaintiff, Deborah Ann Terwilliger, the one seventh part of the proceeds of the sale of the real estate, and of the wood and poles cut thereon. Judgment having been entered in conformity with the decision of the judge, the defendant Brown appealed to this court.

*T. R. Westbrook,* for the appellants.

*M. Schoonmaker,* for the respondent.

*By the Court,* INGALLS, J. The principal question arising upon the facts found in this case, is whether Brown and Ellis acquired a valid title to the property sold at the executor's sale. Ellis was the executor, and Brown was his surety, and the auctioneer who sold the property by the procurement of Ellis. Previous to the confirmation of the sale, by the surrogate, Brown contracted with Ellis to sell and convey to him one undivided half of the premises; which contract was consummated by a conveyance by Brown to Ellis subsequent to such confirmation, and upon the same day that Ellis, as executor, conveyed to Brown the premises sold at the executor's sale. The Revised Statutes (*vol.* 2, *p.* 109, § 27, *Edm. ed.*) provide as follows: " The executors or administrators making the sale, and the guardian of any minor heirs of the deceased *shall not directly or indirectly purchase, or be interested in the purchase of, any part of the real estate so sold. All sales made contrary to the provisions of this section shall be void.* But this section shall not prohibit any such purchase by a guardian for the benefit of his ward." The salutary principle contained in this provision of the statute, in its application to trustees, in regard to the sale of property held

in trust, has received the repeated sanction of the courts, and has been rigidly enforced. The revisors accompanied their original report of this section with the following note: "The general principle, that a trustee shall not purchase the trust property extended so as to make the *purchase void.*" In *De Caters* v. *Le Ray De Chaumont,* (3 *Paige,* 179,) the chancellor remarks: "It is the settled law of the court, that the trustee for a sale cannot become a purchaser on his own account, *or as the agent of another, or through the agency of another.*" In *Davoue* v. *Fanning,* (2 *John. Ch.* 257,) Chancellor Kent says: "If a trustee, acting for others, sells an estate and becomes himself *interested in the purchase,* the *cestui que trust* is entitled to come here as of course, and set aside the purchase, and have the property re-exposed to sale," (p. 260.) "However innocent the purchaser may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself." In *Hawley* v. *Cramer,* (4 *Cowen,* 735,) the court remark: "And the fact that the purchase was *made by the trustee through the intervention of a third person,* or that the trustee purchased as the agent for another, makes no difference in the legal effect of the transaction, or in the application of the general rule." In *Conger* v. *Ring,* (11 *Barb.* 364,) it is said: "The rule is to be enforced with unrelenting rigor, and is not to be limited in its application to those cases where the trustee himself *sells the estate.* The object is to afford the *cestui que trust* the most ample protection against fraud and injustice, *and remove out of the* way of the trustee all inducements to profit by his superior knowledge, and all temptation to speculate upon property which he is under the most binding obligation to manage and sell to the best advantage of others." In *Moore* v. *Moore,* (5 *N. Y.* 256,) it is said: "The law does not stop to speculate upon the probabilities that the agent has resisted temptation;

it removes the temptation, by proclaiming in advance that he shall not acquire the property." (*Story's Eq. Jur.* § 322.) "Indeed the doctrine may be broadly stated, that executors or administrators will not be permitted, under any circumstances, to derive a personal benefit from the manner in which they transact the business or manage the assets of the estate." (*Willard's Eq. Jur.* 189.) "But it is a rule which applies universally to all who come within the principle, which principle is that no party can be permitted to purchase an interest in property and hold it for his own benefit, *when he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser* on his own account, or for his individual use. *And a sub-agent is just as much disqualified* as an agent is, to make a purchase in opposition to the rights and interests of his principal."

I have cited freely from the adjudged cases, for the purpose of showing the extent to which this principle is applied, and the jealousy with which such transactions are viewed by the courts. Brown was procured by Ellis, the executor, to sell the property as auctioneer, and thereby became a sub-agent of Ellis, and upon principle would seem to be within the spirit of the prohibition so firmly established and rigorously enforced by the courts, and therefore should not have been allowed to purchase the premises, even for his own benefit. It is an undisputed fact that Ellis contracted for an undivided half of the property previous to the confirmation of the sale by the surrogate, until which confirmation the sale was incomplete, and no title passed to the purchaser. (2 *R. S. p.* 103, §§ 29, 30. *Dayton's Surrogate, p.* 611, 3d ed. *Rea* v. *McEachron,* 13 *Wend.* 465.) Previous to the confirmation, Brown was not in such sense the owner of the premises as to enable him to make a valid sale thereof. He had not paid the purchase money, nor had the deed been delivered, at the

time Ellis bargained for an interest in the property, and *hence Ellis contracted for such interest before the title had passed from the estate to Brown,* and while he (Ellis,) as such trustee, had control thereof, subject to the action of the surrogate's court. In every view which can be taken of the transaction, it is quite apparent that neither Brown nor Ellis can be protected, as the purchase was a palpable violation of the statute, and in direct hostility to the well established principle that a trustee shall not be allowed, directly or indirectly, to speculate out of the trust property, or to become a purchaser thereof for his own benefit.

I do not think a fatal error was committed in admitting Isaac Terwilliger as a witness. He was, at the time of his admission, a party to the action. Again; it is obvious from his own testimony, and from the manner it was disposed of by the court, that no possible injury resulted to the defendants from his admission as a witness. (*Best* v. *Starks*, 24 *How. Pr.* 58, 61.)

The judgment appealed from should be affirmed, with costs.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls,* Justices.]