30  154
67  441

## FLANDERS *v.* JONES.

A purchaser of an equity of redemption at a sheriff's sale, is estopped to deny or to impeach the mortgage described or referred to in the officer's return and deed, upon the ground that it was made in fraud of creditors.

TRESPASS, *quare clausum.*

In answer to the alleged trespass, the defendant relied on two mortgages from one McKenzie to him, of the premises in dispute, dated January 21 and March 2, 1852, to secure the payment of notes for $200 and $100, of even date therewith.

The plaintiff then introduced a writ of attachment in favor of one Emery, against said McKenzie, founded upon McKenzie's note to Emery, dated Oct. 22, 1851, on which the premises in dispute were attached, March 6, 1852, as the estate of McKenzie; the return stating that the said premises were " subject to a mortgage to Otis Jones and Simon Greeley and Robert Rowe." He also introduced the judgment rendered in said action, April 15, 1852, and the execution issued thereon, and the sheriff's return on said execution, by which it appeared that he had " taken all the right in equity of the said McKenzie, to redeem a certain tract of land, bounded," &c., (describing said premises by metes and bounds,) " the same being subject to a mortgage made by said McKenzie to one Otis Jones, to secure the payment of two hundred and seventy-one dollars and fifty-five cents, and also to one Simon Greeley and Robert Rowe, to secure the payment of fifty-seven dollars and thirty-one cents," and that, after due proceedings, he had sold the said right in equity to the plaintiff, on the 31st day of May, 1852, in the manner provided by law. The plaintiff also introduced in evidence the sheriff's deed, in due form, dated May 31, 1852, conveying to the plaintiff " all the right in equity which the said McKenzie had, on the 6th day of March, 1852, of redeeming" the premises in dispute.

He also offered to prove that the note to Emery, and the debt secured in the Greeley and Rowe mortgage, were just and valid debts, and proposed to contest the defendant's mortgages, and to show that they were fraudulent.

The defendant contended that the plaintiff was estopped by the return of the levy to contest the defendant's mort-

gages; and the court so ruling, directed a verdict for the defendant, subject to be set aside and a new trial granted, or judgment to be rendered thereon, as the opinion of this court should be upon the foregoing case.

*Wm. H. Bartlett,* for the plaintiff.

I.   All fraudulent conveyances are void as to creditors. *Anger* v. *Ash,* 6 Foster's Rep. 108.   And so as to the purchaser of an equity of redemption on execution sale.   *Kimball* v. *Fenner,* 12 N. H. Rep. 248.

II.   The sheriff's deed gives us the right to contest the defendant's mortgage.

1.   It is the only evidence of the contract.   *Mason* v. *White,* 11 Barb. S. C. 173; 12 Dig. 292, 112; *Barney* v. *Patterson,* 6 Har. & J. 182, 2 Dig. 338, 532; Ll. 1830, p. 105, § 3;   Comp. Stat. 502, §§ 1, 6, 7.

It conveys " all the debtor's right to redeem," without any reference to particular mortgages.   This must mean, not merely the interest which the debtor could assert, but the interest which the creditor may claim as the debtor's.   Such is the settled construction of similar language in the statute as to extents.   Ll. 1830, 101, § 1;   Comp. Stat., ch. 195, §§ 7, 8, 12;   ch. 208, § 12;   ch. 209, §§ 1, 11, 12.

By virtue of the execution, the sheriff here, as in other cases, takes all the interest that the law regards as subsisting in the debtor as to creditors.   The thing sold is the right to redeem from valid mortgages, and the purchaser takes the property, subject only to valid incumbrances. *Kimball* v. *Fenner,* 12 N. H. Rep. 248; *Scott* v. *Percell,* 7 Blackf. 66, 7 Dig. 254, 172; *Swanzey* v. *Hunt,* 1 N. & M. 211, 2 Dig. 455, 157.

We do not claim entire privity with the debtor, but our rights are in some respects adverse.   *Frost* v. *Goddard,* 12 Hepl. 417.

2.   Besides, our statute places the purchaser in the position of a creditor.   Comp. Stat. 503, § 14.   And a creditor

purchasing the equity of redemption, on execution sale, may contest fraudulent mortgages. *Van Deusen* v. *Frink*, 15 Pick. 458.

III. The plaintiff is not estopped by the sale and purchase. Were this the only mortgage, the plaintiff would be estopped, because if there were no mortgage, the sale was illegal, and the title under which he claims is void. *Russel* v. *Dudley*, 3 Met. 147; *Ballard* v. *Hinckley*, 6 Greenl. 294. As we have a valid mortgage, that reason cannot apply here; and estoppels are not to be extended beyond the absolute requirements of law. *Otis* v. *Parshly*, 10 N. H. Rep. 408.

IV. The plaintiff is not estopped by the return.

1. The clause relied on is mere erroneous description of the land. Met. Yelv. 227, n. 1; 1 Greenl. Ev. § 26; *Porter* v. *Nelson*, 4 N. H. Rep. 137; *Great Falls Co.* v. *Worster*, 15 N. H. Rep. 414.

2. No description of equity is required in the deed. Comp. Stat. 593, § 7; Ll. 1830, 106, § 6. And as the interest of the law, and not the interest of the sheriff, is material, a mere misdescription of the equity would be unimportant in the deed. *Jewett* v. *Preston*. 14 Shepl. 400; *Welsh* v. *Joy*, 13 Pick. 480; *Griffin* v. *McCauley*, 7 Gratt. 476, 12 Dig. 264, 15. And so of the advertisement of sale. *Pomeroy* v. *Winship*, 12 Mass. 514; *Buffum* v. *Deane*, 8 Cush. 39. As a description of the equity was unnecessary to be given in the advertisement or deed, it was not a matter material to be returned; and as to it, the return is not conclusive. Comp. Stat. 502, § 1; *Brown* v. *Davis*, 9 N. H. Rep. 76.

3. We claim under the deed, and not by the return, and not claiming title under the return, we are not estopped by it. *Great Falls Co.* v. *Worster*, 15 N. H. Rep. 414; *Ingraham* v. *Belk*, 2 Strobh. 207, 9 Dig. 219, 45. At most, as to the plaintiff, the return is not material, only to show the regularity of the proceedings; in all other respects it is immaterial. The plaintiff was no party to it, and had no control

over it. His remedy is against the sheriff, upon his cove-
nant. Rejecting these unnecessary particulars, enough re-
mains to justify the sale. *Jackson* v. *Pratt*, 10 Johns. 386.
If the return creates any estoppel, it can only be to deny a
mortgage and that an equity passed.

V.  No equity requires the estoppel, but the policy of
our law demands that the plaintiff should be at liberty to
contest the fraudulent mortgage.

1.  No one is injured by allowing the plaintiff this right.
If the equity sold too low, the debtor may redeem. *Bailey*
v. *Bagley*, 4 Shepl. 154 ; *Pomeroy* v. *Winship*. If the notes
are *without consideration, the mortgagee cannot enforce
them against him. Demerrit* v. *Miles*, 2 Foster's Rep. 523.
However this may be, the law is not particularly tender in
protecting a party from the consequences of his own wrong.
The fraudulent mortgagee is not injured, for the law regards
him as having no rights here.  The judgment creditor is not
injured, for he might purchase.  If he does not choose to
avail himself of his rights, this does not preclude others.
He cannot waive the right of third parties. *Bullard* v.
*Hinckley*.  Besides, if it were an injury to him or the debt-
or, as it does not affect the mortgagee, he cannot avail him-
self of the objection. *Buffum* v. *Deane*, 8 Cush. 36.  It
works no more injury to any of the parties than the avoid-
ance of a mortgage for a false account.  Comp. Stat. 470,
§§ 8 and 9.

If our position is correct, the sale being of the property,
subject only to valid incumbrances, the purchase money will
be the value of the estate, subject only to such.

2.  The doctrine we contend for merely accomplishes
what the law designs, subjecting the debtor's property to
liability for his debts, and preventing him from the with-
drawal of it from the reach of his creditors.

The policy of the law avoids all fraudulent conveyances,
as to creditors.  Then the plaintiff pursued the only course
provided by statute, and in the absence of statute provis-

ions, the court cannot create another and different remedy. Yet, if this estoppel is to be maintained, the policy of the law is defeated, and its express provisions are rendered nugatory. No estoppel not required by the law, unnecessary to protect any rights regarded by the law, will be established where it can only serve to protect fraud and annul the law.

*Butterfield & Hamlin*, for the defendant.

I. The purchaser of an equity of redemption acquires simply the right of the debtor to redeem. Rev. Stat., ch. 196, § 1. As the debtor cannot avoid his deed on account of his own fraud, so the purchaser of his rights cannot.

II. A creditor may avoid a fraudulent deed. But he has his election whether he will do so or not, and the purchaser takes just such an estate as the creditor elects to sell.

III. The record produced at the trial by the plaintiff, as the evidence of his title, shows conclusively that the creditor elected to sell, and did sell, the estate, subject to the defendant's mortgages. All that the plaintiff acquired was the value of the estate above the incumbrances. To permit him to hold more, would be not only to allow him to hold what he did not purchase, but would be in itself a fraud upon the debtor and upon the creditors. *Russell* v. *Dudley*, 3 Met. 147; *Green* v. *Kemp*, 13 Mass. 515.

WOODS, C. J. In *Tweddell* v. *Tweddell*, 2 Bro. C. Rep. 152, one who had bought of a mortgager his equity of redemption, had given him at the same time a covenant of indemnity against the mortgage debt. In discussing a question that arose upon the effect of this covenant, Lord *Thurlow* remarked, " This appears to be the common case where a man buys an equity of redemption. The question is, whether he becomes personally liable to the mortgagee. The buyer takes it subject to the charge, but the debt, as to him, is a real, not a personal debt. His contract with the mortgager is only that the debt shall not fall upon him; it

is a mere contract of indemnity, and he would be bound without any specific contract to indemnify him, as long as he can pay the money."

In *Waring* v. *Ward,* 7 Vesey 332, in which a like question was in discussion, Lord *Eldon* held the following language; "The same principle applies to the purchase of an equity of redemption; for the party means, at the time of the contract, to buy the estate subject to that mortgage; in relation to which mortgage the personal contract was entered into; and that was not his. If he enters into no obligation with the party from whom he purchases, neither by bond nor covenant of indemnity to save him harmless from the mortgage, yet this court, if he receives possession and has profits, would, independent of contract, raise upon his conscience an objection to indemnify the vendor against the personal obligation to pay the money due upon the vendor's transaction of mortgage; for being become owner of the estate, he must be supposed to intend to indemnify the vendor against the mortgage."

The principle of these cases is, that he who purchases of the mortgager an equity of redemption, takes it *cum onere,* and shall not be a gainer by any proceedings that may be had for enforcing the payment of the debt against the mortgager personally.

The strong equity of the doctrine thus enunciated in those cases is apparent from the nature of the transaction, in which the purchaser pays for the land a sum less than its value by the amount of the incumbrance upon it, and it would be most unreasonable that he should, either by colluding with the mortgagee or otherwise, have the property disencumbered at the expense of the mortgager.

It would, therefore, seem to be but the fair result of an equitable principle, that one who has purchased from the owner himself the equity of redemption, and thus, in some sense, become a party to the charge, and entitled to the entire estate disencumbered upon the payment of its mere

value should not be permitted to avoid or dispute the debt upon the ground of the want or inadequacy of consideration, or other grounds, between the original parties, and he may well be considered as standing much in the position of an accepter of a bill having funds of the drawer. He is a stranger to the consideration, and his obligation to pay is wholly independent of the purposes which the drawer may have in removing his funds to the hands of the payee. *Fuller* v. *Horn*, 6 N. H. Rep. 511.

If the purchaser, at the sheriff's sale, may be regarded as having purchased from the owner of the equity, or as standing as such purchaser would, it would seem from numerous authorities that he would be estopped from contesting the mortgages of the defendant, the fact of their existence being distinctly recited, both in the officer's return and in the deed of the equity of redemption to the demandant. *Toney* v. *Bank of Orleans*, 9 Paige 649, and cases cited. Also *Sinclair* v. *Jackson*, 9 Cowen 586, where it is said " a man who admits a fact or deed in general terms, either by reciting it in an instrument executed by him, or by acting under it, shall not be received to deny its existence." See, also, *Carver* v. *Jackson*, 4 Peters 83. But we need not rest the decision on this ground.

The plaintiff, in this case, purchased the estate subject to the mortgages to Jones and to the mortgage to Greely and Rowe; in terms and in legal effect, the right which McKenzie had to redeem the land from these incumbrances. That was what the officer, by the creditor's direction, exposed to sale, was all that by law he was authorized to sell, and was all that the plaintiff bought. Upon what ground, either in law or equity, can he now claim more ? It is certain that if he gets more, he gets more than he bargained or paid for. There is certainly, then, no equity in his claim of more.

Nor is the law of the case more favorable. The creditor had the right to treat the mortgages to Jones as valid·

They were not void for the cause of fraud alleged, but voidable at the election of McKenzie's creditors. The purchaser was not a creditor of McKenzie, and so could make no election in that matter. But Emery, the creditor in the execution, elected to treat, and did, in fact, treat the mortgages as valid and subsisting. And it is said in *Russell* v. *Dudley*, 3 Met. 147, a case involving a question like the present, that "the creditor, by treating it as a subsisting mortgage, is afterwards estopped to deny the existence of such mortgage; and the demandant, purchasing for the use of the creditor, and taking with a knowledge of all the facts, is likewise estopped. And it was there held that the purchaser could not avoid the mortgage on the ground of fraud. The chief justice, in delivering the judgment of the court, further remarked: "The purchase money must be understood to be the value of the estate over and above the sum for which it was mortgaged. If he could afterwards avoid that mortgage and hold the whole estate, he might get it for a very inadequate consideration; he would get what the officer never intended to sell, to the manifest injury of the debtor, and perhaps of the creditor. It would be injurious to the debtor, by taking the whole of the estate by force of a legal proceeding, intended to convey the balance of the value of the estate, after paying the mortgage debt, leaving the debtor still liable for that debt. It would be injurious to the creditor, if the actual proceeds of the 'sale should prove insufficient to pay the whole amount of the execution."

This language of the learned chief justice appears to us to convey a just doctrine, and to be conclusive upon the point that the plaintiff, in taking his title to the equity of redemption from a sale by legal process, does not stand in a different position, or with a better right to question the mortgage, than the creditor who has made his election, and that both are bound by it.

It will be seen, too, that according to the view of the court in that case, the purchaser of the equity, sold for the benefit

of a creditor, does not represent the creditor's right to inquire into the consideration of the mortgage debt, or to impeach it upon any grounds not open to the debtor mortgager himself, and that he gains no advantage whatever from the fact that the sale was by a sheriff, on execution, for the satisfaction of a debt. The thing sold was described by the official act of sale, and by the officer's deed, in the case cited, as the "right in equity," which the tenant had to redeem, &c. A more precise and unequivocal description, in the case before us, places the recognition of the mortgages beyond all controversy, and according to the doctrine declared, limits the purchase, most clearly, to the interest of the debtor in the land, over and above the sums named in mortgages.

A question substantially like the present was raised and decided in *Brewer* v. *Hyndman*, Grafton county, 1846. The plaintiff had bought, at a sale in bankruptcy, the bankrupt's title to certain real estate, scheduled as being subject to a mortgage to the defendant for a certain sum. The plaintiff, upon a petition to redeem, endeavored to avoid the incumbrance upon the ground that it was fraudulent against creditors. There were other points in the case; but upon the one stated, the court held that the petitioner stood in the place of the mortgager himself, and had not a creditor's right to question the transaction between the original parties; that he had bought an equity of redemption, and by the act he recognized the mortgage, and was, in law, estopped to avoid or to impeach it, upon grounds not open to the bankrupt mortgager himself.

The case does not require that we should point out the course by which the mortgages to Jones might have been tested, in reference to their validity against creditors. In reference to that question, the following suggestions were made by the chief justice, in delivering the judgment of the court in *Russell* v. *Dudley*. "Perhaps, by special notice at the sale, by the terms of sale recited in the officer's deed, or

by special reservations and descriptions in the deed itself, the estate, subject to the uncontested valid mortgage, and, of course, an equity of redemption, might be sold in such form as to give the purchaser a right to contest the second mortgage and set it aside, if in fact fraudulent against creditors, and redeem and hold the estate by paying the first mortgage only." The question was there stated to be new, and was expressly reserved for future determination, and we intend expressing no opinion on the point.

In conclusion, we are of opinion that the ruling of the court was correct, in the particular in which the exception was taken, and there must be

*Judgment on the verdict.*