TORREY & GILBERT *vs.* THE BANK OF ORLEANS & CLARK.

Where T., who was the owner of four lots of land and of a small farm of forty acres, had mortgaged the same to F. to secure the payment of $3000, in five years, with annual interest, and afterwards sold two of the lots and the farm to G. as the trustee of B., who assumed the payment of $2000 of the mortgage as a part of the purchase money, and T. conveyed the two lots to G. by a deed, which stated the existence of the mortgage, and that $1747 of the mortgage money, and the interest thereon, was to be considered as the lien upon these two lots, and was to be paid by the grantee in such deed as it should become due; and the farm was conveyed in like manner to G., charged with $253 of the mortgage money and interest; and G. subsequently conveyed the farm to A. subject to the lien of $253 and interest, and took back a bond and mortgage for $1800 of the purchase money; and G. afterwards assigned the $1800 mortgage to the Bank of Orleans, and conveyed the bank the two lots by a deed which stated the amount or part of the mortgage to F. which was a charge upon those lots, and that it was to be paid by the

1842.

Torrey
v.
Bank of Or-
leans.

bank as it should become due; *Held*, that the Bank of Orleans was legally and equitably bound to pay off and satisfy the part of the mortgage which was intended to be a charge upon the lots conveyed to the bank, so as to relieve the residue of the mortgaged premises from that part of the him thereon.

And the Bank of Orleans having neglected to pay its portion of the mort. gage, in consequence of which the mortgage was foreclosed; and the cash- ier of the bank, upon the master's sale, having bid in one of the remaining lots of T., which lot was in equity discharged from the lien of the mort. gage as between T. and the bank; *Held*, that the purchase of such lot upon the master's sale was improper and inequitable, and must be set aside.

It is a settled principle of equity, that a person who is placed in a situation of trust or confidence in reference to the subject of the sale cannot be a pur. chaser of the property on his own account. And this principle is not con. fined to a particular class of persons, such as guardians, trustees and soli. citors.

It is a rule of equity of universal application that no person can be permit. ted to purchase an interest in property where he has a duty to perform which is inconsistent with the character of purchaser.

Where a bank is bound to pay off and discharge a mortgage, so as to relieve the property of a third person from a sale under a decree of foreclosure, the cashier who is the agent of the bank is not authorized to become the purchaser of the property on his own account, and thereby to render the bank liable to indemnify such person for the loss of his property.

October 4.     THIS was an appeal from a decree of the vice chancellor of the eighth circuit. Torrey, one of the complainants, being the owner of four lots of land, numbered 12, 169, 170 and 182, containing from 93 to 100 acres each, and 40 acres of another lot known as Torrey's Homestead farm, mortgaged the whole to the Farmers' Loan and Trust Company in 1835, to secure the payment of $3000, in December, 1840, with annual interest; the whole to become due and payable if the interest should be in arrear for thirty days after it was due. In June, 1838, Torrey agreed to sell to Burnet lots No. 169 and 170, and the homestead farm, for $5904; from which was to be deduct- ed $2000 of the mortgage and interest thereon from the 1st of November, 1837, which portion of the mortgage Burnet was to pay, and the same was to be a lien upon the lands thus sold to him. Pursuant to that agreement Tor- rey and his wife conveyed to A. Gardiner, at the request

and for the benefit of Burnet, lots No. 169 and 170, by a deed which stated the existence of the mortgage on the whole of the lots, and that $1747 of the mortgage money with the interest thereon was to be considered as a lien on these two lots and was to be paid by Gardiner, the grantee thereof, to the Farmers' Loan and Trust Company as it should become due, with the interest thereon. And at the same time Torrey and wife, at the request and for the benefit of Burnet, conveyed to Gardiner the homestead farm, the deed for which contained a similar recital of the mortgage, and that $253 of the mortgage money and interest thereon was to be considered as a lien on that farm, and was to be paid by Gardiner the grantee, in the same manner. In July, 1838, Torrey and wife, by an arrangement with a person with whom he had previously contracted to sell the same, conveyed so much of lot No. 12 as was covered by the mortgage to the Farmers' Loan and Trust Company, to the Bank of Monroe, by a deed which recited the existence of the mortgage, and that $1000 thereof and interest was to be considered as a lien on the premises conveyed by that deed and was to be paid by the grantee the Bank of Monroe. Gardiner afterwards conveyed the homestead farm to H. Allen, with a similar provision in the deed as to the $253, which was, by the deed from Torrey, to be a lien upon that lot; and Allen gave back to Gardiner a mortgage on the premises thus conveyed, to secure $1800, a part of the purchase money thereof.

Burnet being largely indebted to the Bank of Orleans, he made an arrangement with the bank, in August, 1838, by which he procured to be transferred to such bank, in security for such debt and in discharge of his personal liability therefor, certain bonds and mortgages, land contracts and lands, and among others the mortgage of Allen on the homestead, and the two lots No. 169 and 170 conveyed by Torrey to Gardiner. In estimating the value of the Allen mortgage and the two lots conveyed by Gardiner, the amount of the previous incumbrance thereon by reason of the mortgage to the Farmers' Loan and Trust Company,

was estimated at $2000, and it was understood by the of-
ficers of the bank that the other third of the mortgage had
been assumed by the purchasers of lot No. 12. The deed
from Gardiner to the bank for the two lots No. 169 and
170 recited that it was expressly understood between the
parties to that conveyance " that these two lots, together
with the other lands, (describing them) are subject to the
$3000 mortgage and interest to be paid annually, the pro-
portion of which sum of $3000 and interest *to be paid by
the said party of the second part,* was estimated, on the
7th day of June, 1838, at about $1747, which sum is a
lien on the above bargained premises, *and to be paid by
the parties of the second part as the same shall become
due.*"

In March, 1839, the annual interest which became due
on the first of November, 1838, not having been paid,
the Farmers' Loan and Trust Company filed a bill in this
court for the foreclosure of their mortgage ; in which bill
Torrey and wife, Gardiner, Allen and wife, the Bank of
Monroe, and the Bank of Orleans and divers others were
made defendants. In January, 1840, a decree was made
in that cause for the foreclosure and sale of the mort-
gaged premises ; and directing the master to sell the same
in such order as might be in accordance with the equi-
table rights and interests of the several parties, and that
in case of a deficiency in the proceeds of the sale of any
parcel of said premises which as between any of the said
defendants was liable in equity in the first place for the
payment of the said mortgage debt and costs to pay the
same, that any of the defendants should be at liberty to
apply on the foot of that decree for such relief against any
party liable to pay the same as they might be advised was
necessary.

During the pendency of that suit and about a month be-
fore the decree therein, Torrey mortgaged to Gilbert, one
of the complainants in this cause, lot No. 182 to secure the
payment of $2300, in three yearly payments with interest
thereon annually. Before the decree in the foreclosure

suit, the cashier of the Bank of Monroe suggested to Clark, one of the defendants in this suit, who was the cashier of the Bank of Orleans, the propriety of their paying off the mortgage and stopping further costs on the foreclosure; but Clark preferred that a sale should be had under a decree in that cause to perfect the title of the Bank of Orleans to its three lots. And it was finally arranged, that upon the sale of the property by the master, Clark should attend the sale, and either bid off the lands upon which both had their claims together, and conveying lot No. 12 to the Bank of Monroe upon the payment of one third of the amount due on the mortgage and one half of the costs, or should bid in that lot for the Bank of Monroe at that amount. He accordingly attended the sale, as the cashier and agent of the Bank of Orleans, and bid off lot No. 12 in the name of the Bank of Monroe, at the price fixed upon by the arrangement. And he then had lots No. 169 and 170 and the homestead farm put up in one parcel and bid them off in the name of the Bank of Orleans, for $1402,13 only; leaving a balance due upon that part of the decree which was equitably chargeable upon those lots of $1074,03. The master thereupon put up the lot of Torrey, No. 182, on which Gilbert had the second mortgage, and it was bid in by Clark in his own name at the last mentioned sum; no other person than Clark being present as a bidder at the sale.

The complainants by their bill in this cause, which stated the above facts substantially and alleged that they were ignorant whether lot No. 182 had been conveyed to the Bank of Orleans or to Clark in his own right, prayed that the defendants might be decreed to reconvey that lot to the complainant Torrey, subject to the lien of Gilbert thereon by virtue of his mortgage; and for such further or other relief as they might be equitably entitled to upon the case made by their bill. But the vice chancellor decided that the purchase by Clark of lot No. 182, whether he bid in the same for himself or for the Bank of Orleans, was a valid purchase, and that the purchaser was entitled

654

1842.

Torrey
v.
Bank of Or-
leans.

to hold it as against the complatnants; and that the bank was only bound to pay to them the amount of the deficiency in the sale of the previous lots, with the interest thereon from the time of the sale. He therefore decreed a dismissal of the bill as to the defendant Clark, with costs; and directed the Bank of Orleans to pay to Gilbert that amount, and to pay the complainants their costs of the suit, to be taxed. From that decree the complainants appealed to the chancellor; and the Bank of Orleans appealed from so much thereof as was adverse to that institution.

*J. W. Gilbert,* for the complainants. The acceptance by Gardiner of the deed from Torrey, with the clause therein contained in respect to the payment of the prior mortgage, created an express agreement on his part to pay off the mortgage and indemnify Torrey. And Torrey retained an equitable lien for the performance of such agreement. (2 *Co. Litt. by Thomas,* 187. 4 *Cruise Dig.* 393. *Cr. Tac.* 240. 2 *Salk.* 450. 9 *Pick. Rep.* 486. 13 *Idem,* 134. 18 *Wend. Rep.* 618. 6 *Cowen,* 448. 5 *Bro. P. C.* 299. 5 *Sim. Rep.* 535. 7 *Ves.* 336. 5 *Barn. & Cress.* 589. 7 *Paige's Rep.* 594.)

The Bank of Orleans purchased with notice, and is therefore bound to the same extent and in the same manner as Gardiner. (*Lewin on Trusts,* 206. 2 *Story's Eq.* 242, 480. 7 *Paige's Rep.* 427, 594. *Sug. Vend. and Purch.* 268, 269. *Coote on Mort.* 18. 1 *Paige's Rep.* 21. 1 *John. Ch. Rep.* 308. 6 *Idem,* 402. 13 *Pick. Rep.* 138. *Powell on Mort.* 106, 352.) And the obligation to pay off the prior mortgage may be enforced directly against the bank. For Gardiner took the land subject to a trust, and upon the conveyance from him the trust was raised de novo, by operation of law, as against the bank, Gardiner's grantee. (*Lewin on Trusts,* 205, 209. 6 *John. Ch. Rep.* 402.) And equity will make that party liable immediately who is ultimately liable at law. (13 *Pick. Rep.* 138. 7 *Paige's Rep.* 421. 5 *Cranch,* 522. 7 *Idem,* 69, 97. 2 *Story's Eq.* 488.)

The complainants had not an adequate remedy at law. The mortgage to Gilbert operated as an equitable assignment of Torrey's claim upon his grantees, which equity only could adequately protect. But even if the complainants had a remedy at law, this court has concurrent jurisdiction. Moreover the defendants have voluntarily submitted to the jurisdiction, and the objection cannot be taken on the hearing. (2 *Paige's Rep.* 509.) Torrey's lien extended as well to the forty acre tract sold to Allen, as to the other land ; and the bank having purchased that lot with notice and in violation of the trust, their claim to that lot must be placed on the same footing as their claim to the other lots. The bank having permitted lot 182 to be sold for a part of the money, and upon the original mortgage, which they were bound to pay off, it was a fraud upon Torrey, and the complainants are entitled to a decree against the bank for the value of lot 182, or to be subrogated to the place of the Trust Company for this purpose, the money to be distributed as follows : 1. To pay Gilbert his mortgage debt and interest ; and 2. To pay Torrey the residue.

Clark is not entitled to costs, because the circumstances under which he purchased had an aspect of gross bad faith, and the complainants were justified in calling upon him to answer. The foreclosure of the trust company mortgage, and the purchase by the bank under that foreclosure, does not affect the rights of the complainants ; because the bank had no right to suffer a foreclosure. And Torrey's lien was an equitable mortgage, and the bank was his mortgagee. If a party is a mortgagor to two mortgages, and on a foreclosure of the elder mortgage he becomes the purchaser, the lien of the last mortgage is preserved the same as if he had paid off the elder mortgage without foreclosure.

*H. R. Selden*, for the defendants. The Bank of Orleans was not bound to pay any part of the Trust Company mortgage unless it elected so to do. The provision in the deed operates only as a notice to the bank that the lands are subject

to the incumbrance of the $3000 mortgage, and that the bank must clear the land from the mortgage or lose it. It has no other binding force upon the bank. The bank did not execute the deed ; and it amounts to neither a covenant nor a contract of any kind as against the bank. True it says, " To be paid to the Farmer's Loan and Trust Company as the same shall become due." What is the penalty if the party of the second part fails to pay ? Merely that he must lose the land. It will be observed that the terms of this deed are the language of the grantor, and the effect thereof, taken as a whole, is this : " I convey to you this land ; it is subject to an incumbrance of $2000, to be paid by you, and if you fail to pay, you lose the land." Such is what the complainants' own witness, Judge Gardiner, says was the understanding of the parties at the time of the conveyance. But in no possible view could the bank be held to the payment of that part of the mortgage charged on the forty acres ; and that not being paid, they would be justified in suffering a foreclosure, even if bound to pay the $1747.

If the bank can be considered as bound to pay any part of the $3000 mortgage, it is not bound to the complainants, or to either of them, in law or equity. Admitting that the bank, by accepting the deed, contracted to pay a portion of the $3000 mortgage, with whom was the contract made ? Not with Torrey or Gilbert certainly. It can hardly be said that it was made with Gardiner. Could he sue at law for the non-performance ? Clearly not ; for it is no agreement to pay him any thing, and he is not entitled to the money. Perhaps treating it as a contract on the part of the bank, the Farmers' Loan and Trust Company could maintain an action if they were not paid ; but they had received their money. Giving to this clause in the deed the full force of a contract or covenant on the part of the bank to pay this money, it has been fully performed. The bank has paid fully, and literally, all they agreed to pay. This provision of the deed is the language of the grantor, and by the rules of construction is to be construed most

strongly against himself. The other party, if bound at all, which we deny, certainly cannot be bound beyond the letter of the covenant to pay the amount of the debt, so that it be cancelled; availing himself to do so of the equitable claim on the other lands covered by the mortgage to aid him in doing it. If the party wanted to have these lands discharged, and the debt paid besides, he should have so expressed it in his deed.

Both these parties are foreclosed by the decree in the foreclosure suit. The one as a party, the other as a purchaser pendente lite. If Torrey or Gilbert had any equitable defence to the suit, or reason why lot No. 182 should be exempted from sale, they should have appeared and interposed their claim. The decree expressly cuts off all their equity of redemption and claim, and any of the parties by the terms of the decree had a right to purchase discharged of all such equity or claim. The bank and Clark did so purchase; the sale was in all respects fair and regular. They are in under the title of the mortgagee, which over-reaches all other claims, and we say unhesitatingly they cannot be disturbed without opening their decree. But if the complainants have any remedy, it is at law, and not in this court. It seems to me very clear that the complainants have no claim whatever, except upon the ground that the bank by accepting the deed, with the provision in relation to the payment of part of the $3000, in effect promised to make that payment. Now supposing this to be the fact, what is it but a mere valid promise to pay a specific sum of money, which the party has neglected to pay? It is the most usual and ordinary ground of all suits at law. If the complainants have suffered damage beyond the amount of the money and interest it is their own fault, and does not furnish a ground for equitable relief. The result would have been the same if the bank had, without buying the lands, given Torrey a bond to pay him $2000 in a given time—failing in which the loan company foreclosed, and he lost all his land in consequence of inability to pay created by default of the bank. This cer-

tainly would give one ground for relief in equity instead of a resort to law.

Clark's title to lot 182 is absolute and cannot be impeached by the complainants, even if Torrey has held the bond of the bank to pay off the mortgage, and Clark had full value of it ; and that the bank wholly refused to do it, it could not in any way affect his title. He comes in under the mortgage and with all the rights of the mortgagee, the equity of redemption being foreclosed by the decree and sale. The refusal of the bank to pay, if bound to do so, did not render the sale unlawful. The loan company had a right to sell, and indeed could get their money in no other way ; nor could the refusal of the bank with knowledge of it in Clark render it improper or illegal in him to bid on the sale, or render a sale to himself less valid than it would have been to any other man ; and certainly the loan company had power to make a valid sale. The remedy of the complainants, if any, must be against the bank alone. This shows that upon no grounds could the complainants have a remedy now, after decree, for any thing but the money and interest agreed to be paid ; and if so, that remedy is at law and not here. It is not our fault if Torrey did not make the provisions of his deed as he intended.

If there is any remedy for the complainants, it is against Gardiner alone. But in case the bank is liable, it is only liable to pay the difference between the amount bid and the amount of the $2000 which it was to see paid.

THE CHANCELLOR. The vice chancellor was clearly right in this case in supposing that the Bank of Orleans, as between that institution and the complainant Torrey, or any persons claiming an interest in lot No. 182, under him, was bound to pay off and satisfy the mortgage to the extent of $1747 and interest, and a proportionate amount of the costs. And the Bank of Monroe was in the same manner bound in equity to pay off the other $1000 and interest and one third of the costs. The deeds themselves which are in evidence show this, independent of any parol testimony, except so far as such testimony might be necessary to

prove the fact of the actual acceptance of such deeds by the grantees therein respectively. A recital of a fact in a deed is, as against the grantee in such deed and all persons claiming under him through that deed, evidence of the fact recited therein; so as to save the necessity of further proof thereof by the grantor or those who claim under him. The acceptance of the deed operates as an estoppel upon the grantee and those who claim under him as against the grantor and his assigns or representatives. (*Cov. Read. Ed. of Coke*, 352, (a). *Carver* v. *Jackson*, 4 *Peter's Rep.* 83, 88.) The late Chancellor Jones, in delivering the opinion of the court for the correction of errors in the case of *Sinclair* v. *Jackson*, in December 1826, recognizes this principle, that a man who admits the existence of a fact, or deed, either by reciting it in an instrument executed by him, or by acting under such instrument, shall not be received to deny its existence. (8 *Cow. Rep.* 586.) And in a previous case in the same court, it was held that the recital in a will, of a previous conveyance of a part of the testator's estate, was conclusive evidence of the fact of such conveyance, as against a person claiming under the attainder of one of the devisees of another part of the estate; which devisee was also an heir at law of the testator. (*Denn* v. *Cornell*, 3 *John. Ca.* 174.)

In the case under consideration the Bank of Orleans derived its title to lots No. 169 and 170, and to the mortgage of Allen on the homestead lot, through and under the deeds of those lots to Gardiner; which deeds recited the existence of the mortgage to the Farmers' Loan and Trust Company and the amounts that by the arrangement of the grantor and grantee were to be considered as liens on those lots; and which amounts, as the recitals showed, Gardiner the grantee agreed to pay when they should become due, with the interest thereon. No part of the principal or interest of these two thousand dollars of the bond and mortgage, or of the $1000 which was afterwards assumed by the Bank of Monroe, was then due; as the interest was payable annually and had been paid up to the 1st of November, 1837.

By the acceptance of those deeds, therefore, the homestead farm and the two other lots were not only chargeble with their respective portions of the $2000 and interest apportioned thereon, and a proportionate share of the costs which might be made by a foreclosure of the mortgage if the interest should not be paid when it became due, but the grantee himself was by the acceptance of such deeds, both legally and equitably bound to pay those portions of the charge ; so as fully to indemnify Torrey the grantor, and his remaining lots against the consequences of the non-payment, in case the premises conveyed by such deeds should not, upon the foreclosure of the mortgage, bring sufficient to pay that portion of the debt, and the costs.    By the subsequent conveyance of lot No. 12 to the Bank of Monroe, by a deed containing a similar recital, that institution assumed a similar responsibility to the grantor in reference to the residue of that mortgage and his remaining lot, No. 182. Had Gardiner therefore remained the owner of the lands granted to him and if, instead of paying off his part of the mortgage as he was both legally and equitably bound to do, under the agreement recited in the deeds for his three lots, he had suffered the mortgage to be foreclosed for the non-payment of his part of the incumbrance and had bid in lot No. 182 upon the sale under the decree, it would unquestionably have been the duty of this court, under such a reservation of the equitable rights of the defendants in the foreclosure suit as was contained in that decree of foreclosure, to have compelled Gardiner to relinquish such purchase and to release that lot to Torrey, or those claiming under him.    And if the lot had been purchased by a stranger, who had no duty to perform as the agent of Gardiner upon the sale and was under no obligation to protect the equitable rights of the owner of that lot, Gardiner would, in equity, have been bound to indemnify Torrey for the loss he had sustained by such sale.

Such being the legal and equitable liabilities of Gardiner at the time he conveyed the two lots to the Bank of Orleans, he took the precaution to insert, in his deed to that

1842.

Torrey
v.
Bank of Or-
leans.

institution, a corresponding recital, which is conclusive evidence against the grantees therein who accepted that dced, of the agreement that such grantee was to pay off and discharge the amount charged upon those two lots; so as to relieve Gardiner from the responsibility which he had assumed by the agreement recited in the deed from Torrey. Whether Torrey could have sued the Bank of Orleans in an action at law, founded upon its agreement to pay as recited in the deed from Gardiner, according to the principle of the cases referred to by Chancellor Kent in *Cumberland* v. *Codrington,* (3 *John. Ch. Rep.* 254,) is perhaps doubtful. For it is evident that Gardiner himself had an interest in that agreement, as well as Torrey, to indemnify him against the responsibility he had assumed by the recital in the previous deed to himself. There is no doubt, however, that a court of equity, to prevent circuity of action as well as to protect the rights of Torrey, for which purpose that agreement was more especially intended, is bound to give him the benefit thereof in the same manner as if it had been recited in a conveyance directly from him to the bank for these two lots. And if the bank itself had become the purchaser of lot No. 182 at the master's sale, I think there could not have been any reason to doubt that in equity that institution could not hold the lot as against these complainants. The provision in the decree of foreclosure that any of the parties to the suit might become purchasers at the master's sale was not intended to permit one defendant to bid in a portion of the premises belonging to another, and to hold the same as against the latter contrary to equity; but it was inserted merely to avoid the effect of a supposed technical rule that a party to the suit cannot be a purchaser under the decree therein, without special permission.

The question therefore arises whether the defendant Clark is to be considered as a mere stranger to the other parties, so as to entitle him to hold this lot No. 182 which he bid off at the master's sale, in his own name. Previous to considering that question, however, it may be proper

to inquire what were the equitable rights of the Bank of Orleans and the complainants as between themselves, at the time of the sale under the decree, in reference to the part of the mortgage money and interest and costs chargeable upon the homestead lot, by the deed to Gardiner and by the subsequent conveyance of that lot to Allen. As to that lot it will be recollected that upon the conveyance to Allen, he gave back a bond and mortgage to Gardiner for $1800, to secure that portion of the purchase money; which bond and mortgage were assigned by Gardiner to the Bank of Orleans at the same time that he conveyed the other two lots to that institution. It does not appear that any recital was contained in that assignment, of an agreement on the part of the bank to pay off and satisfy the $253 and interest charged upon that part of the premises which was embraced in the mortgage to the Farmers' Loan and Trust Company. Neither is there any parol evidence of such an agreement at the time of the assignment; though it was well understood that the bank was to take the mortgage of Allen upon the homestead farm, subject to the amount of the original mortgage, which, as between Torrey and Gardiner and Allen, was equitably chargeable thereon. Had the bank, therefore, paid up the amount of the debt and interest and costs which was properly chargeable upon lots No. 169 and 170, or if Clark had bid up those lots to that amount, and the homestead lot had been sold separately and had produced less than the amount charged thereon, I am not prepared to say the complainants would have had any equitable claim against either of these defendants for the deficiency which in that case would have been chargeable upon lot No. 182. It appears, however, that the agent of the bank suffered all three of the lots in which that institution had an interest to be put up together, and bid in the whole in one parcel for an amount far less than the sum the bank was equitably bound to pay under the agreement contained in the recital of the deed from Gardiner for the other two lots. The homestead lot, as appears by the mortgage thereof, was

1842.

Torrey
v.
Bank of Or-
leans.

sold to Allen for $1800 in addition to the amount of the original mortgage charged thereon, and there is no room to doubt that the actual value of that lot was much more than the $253 and interest, and a rateable proportion of the costs of foreclosure. The fact that the Bank of Orleans was not liable to pay that amount if the homestead lot had been sold separately and produced less, cannot therefore alter the equities between these parties under the circumstances of this case as they now exist.

It is a settled principle of equity that no person who is placed in a situation of a trust or confidence in reference to the subject of the sale can be a purchaser of the property on his own account. And in the recent case of *Greenlaw* v. *King*, decided in the court of chancery, in England, in January, 1841, (5 *Lond. Jur.* 18,) Lord Cottenham held that the principle was not confined to a particular class of persons, such a sguardians, trustees, or solicitors ; but was a rule of universal application to all persons coming within its principle, which is that no party can be permitted to purchase an interest where he has a duty to perform that is inconsistent with the character of purchaser. (*See Hawley* v. *Cramer*, 4 *Cowen's Rep.* 736, *and the cases there referred to.*) What was the duty then of the defendant Clark in reference to this sale, standing as he did in the situation of cashier and agent of the Bank of Orleans and bound to protect its rights on the sale by the master ? That bank, by the agreement recited in the deed from Gardiner, was bound to pay off and discharge so much of the $1747, with interest and costs chargeable on the two lots conveyed to it as should not be raised by the sale of those lots by the master, and to indemnify not only Gardiner but Torrey and those claiming under him, from the consequences of a neglect to do so. Bidding in these two lots and the homestead farm for the bank, and purchasing lot No. 182 in his own name for the deficiency which the bank was bound to pay, would therefore leave the bank equitably liable to the complainants for the value of the last mentioned lot ; which amount would be lost by

the neglect of the cashier to perform the engagement of that institution. Whether lot No. 182 was or was not worth more than than the amount of the agent's bid is a matter of fact which is never inquired into in such cases ; the general interests of justice requiring that purchases made by persons holding a fiduciary situation in relation to the sale, should be set aside in all cases, if an application is made within a reasonable time. For as Lord Eldon very correctly observed in the case of *James*, (8 *Ves.* 345,) no court is equal to the ascertainment of the truth in much the greater number of cases. Clark cannot then be permitted to hold this lot as against the complainants and thus leave the bank to make good the loss to them. He must, therefore, relinquish it to the complainants, and look to the bank for payment of the amount of his bid if he did not in fact purchase it for the bank itself.

The decree of the vice chancellor must be reversed with costs to be paid by the defendants to the complainants. And a decree must be entered, declaring that the Bank of Orleans was in equity bound to bid the two lots conveyed to them by Gardiner up to the amount of the $1745 and interest, mentioned in the recital of the deed from Gardiner to the bank, and a proportionate share of the costs, or to pay off and discharge that amount for the benefit of Torrey and his mortgagee ; and that the purchase of lot No. 182 by Clark, whether on his own account or for the benefit of the bank, was inequitable as against the complainants, and that the same be set aside. And he and the bank must release and quit-claim to Torrey that lot, subject to the lien of Gilbert thereon by virtue of his mortgage, with covenants against any acts of theirs or either of them, whereby the legal title to the same, acquired under the master's deed, has been in any way impaired or incumbered ; and if they, or either of them, are in possession of that lot or of any part thereof, the same must be delivered up to the complainants. And the defendants must also pay to the complainants their costs of this suit to be taxed.

If the defendants, or either of them, have taken possession

of the premises or any part thereof, under the master's deed, the complainants are to be at liberty to apply to the chancellor, upon the foot of this decree, for a reference to compute and ascertain the value of the rents and profits of the premises; and for the payment of the same by the party who is justly chargeable therewith, upon the coming in and confirmation of the report. The defendant Clark is also to be at liberty to apply for a further decree as against his co-defendant the Bank of Orleans, for the payment to him of the amount of his bid upon this lot at the master's sale, with the interest thereon, if it has not already been paid to him out of the funds of the bank. And the question as to the costs of the reference, and all questions of costs as between the defendants themselves, and all further questions and directions are in the mean time to be reserved.